IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–01884–KMT–MEH

JAQUELYN ANN WHITTINGTON, individually and on behalf of all other persons similarly situated,

    Plaintiff,

v.

TACO BELL OF AMERICA, INC., and
TACO BELL CORP.,

    Defendants.

---

**ORDER**

---

This matter is before the court on Defendants' "Amended Motion to Compel Arbitration." (Doc. No. 37 [Mot.], filed 12/02/2010.)

**STATEMENT OF THE CASE**

The following description is taken from Plaintiff's Complaint. (Doc. No. 1 [Compl.].) Jacquelyn[1] Ann Whittington (Plaintiff), sues Taco Bell of America, Inc. and Taco Bell Corp. (Defendants) for violations of the Fair Labor Standards Act (FLSA) and the Colorado Minimum Wage Order. (*Id.* at ¶¶ 42-56.) She brings claims on behalf of herself and a putative class of "other current and former assistant general managers and similarly situated current and former

---

[1] Plaintiff's first name is misspelled in the caption fo her complaint.

employees holding comparable positions with different titles, employed by Taco Bell in the United States at their Taco Bell company-owned restaurants."[2] (*Id.* at ¶ 1.)  Plaintiff alleges that Defendants misclassified Plaintiff and other similarly situated employees as exempt from federal and state overtime laws and failed to pay them for all hours worked as well as for overtime worked.  (*Id.* at 1.)  Plaintiff's first claim for relief asserts violations of the FLSA, 29 U.S.C. §§ 201 *et seq*.  (*Id.* at ¶¶ 42-51.)  She seeks to pursue her FLSA claims as a collective action pursuant to 29 U.S.C. § 207.  (*Id.* at ¶ 18.)  Plaintiff's second claim for relief alleges violations of the Colorado Minimum Wage Order, on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3).  (*Id.* at ¶¶ 24, 52-56.)

## PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on August 6, 2010.  (Doc. No. 1.)  On September 20, 2010, Defendants filed their Answer.  (Doc. No. 13.)  On November 30, 2010, Defendants filed a motion to compel arbitration, which this court denied for failure to comply with D.C.COLO.LCivR 7.1.A.  (Doc. Nos. 33, 34.)  Defendants refiled their motion as an "Amended Motion to Compel Arbitration" on December 2, 2010.  Plaintiff filed a response on January 14, 2011 (Doc. No. 43 [Resp.]) and Defendants filed a reply on January 31, 2011 (Doc. No. 46 [Reply]).  The motion is ripe for review and ruling.

---

[2] Plaintiff's Complaint asserts that Taco Bell is a chain operation, ultimately owned by Defendants, and approximately 23% of the Taco Bell franchises are owned by Defendants. Plaintiff explains that this case only involves the assistant general managers, or their equivalents, at the Taco Bell units owned by Defendants.  (Compl. at 2 n.1.)

## LEGAL STANDARD

The Federal Arbitration Act (FAA) requires a court to compel arbitration pursuant to the terms of the parties' agreement if a valid, enforceable arbitration agreement exists and the asserted claims are within the scope of that agreement. 9 U.S.C. § 4. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). However, when the parties dispute the existence of a valid arbitration agreement, there is no presumption in favor of arbitration. *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir.1997).

## ANALYSIS

Defendants seek "judicial enforcement of arbitration provisions executed by certain members of the putative class." (Mot. at 1.) Specifically, Defendants seek an order requiring Colorado putative class members[3] who executed arbitration agreements with Taco Bell to submit

---

[3] Plaintiff seeks to bring her Colorado Minimum Wage Order claims "on behalf of all persons who were employed by Defendants at any time since August 3, 2007, in the State of Colorado, to the entry of judgment in this case (the "Class Period"), who held the position of assistant general manager and other comparable positions with different titles, who were classified as exempt by Defendant, who did not receive compensation from Defendants for all hours worked, and who were not paid legally required overtime wages (the "Class")." (Compl. at ¶ 25.)

their Second Claim for Relief to binding arbitration.[4] (*Id.*) Plaintiff objects that Defendants have not established the existence of an enforceable arbitration agreement by admissible evidence and that an order compelling arbitration by putative class members before a class is certified amounts to an advisory opinion. (Resp. at 6.)

When there is a dispute over whether the parties have agreed to arbitrate, this district applies "a standard similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (citation omitted). Under this approach, the defendant must present evidence sufficient to demonstrate an enforceable arbitration agreement. *Id.* If this is shown, the burden shifts to the plaintiff to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56. *Id.* If the plaintiff demonstrates a genuine issue of material fact, the court must hold a trial on the existence of an arbitration agreement. *Id.*

As evidence of the existence of an enforceable arbitration agreement, Defendants provide a declaration by Cynthia Nichols, Associate Manager of Litigation for Defendants. (Doc. No. 37-1 [Nichols Decl.].) According to Ms. Nichols, beginning in early 2004, Taco Bell job applications in the State of Colorado contained an "Agreement to Arbitrate." (*Id.* at ¶ 6.) Ms. Nichols represents that the Agreement to Arbitrate provides:

> Agreement to Arbitrate. Because of the delay and expense of the court systems, Taco Bell and I agree to use confidential binding arbitration, instead of going to

---

[4] Defendants state that Plaintiff's First Claim for Relief for violations of the FLSA is also arbitrable pursuant to the Agreement to Arbitrate, but "[f]or purposes of efficiency . . . Taco Bell seeks to compel arbitration only of the Colorado Wage Act claims." (Mot. at 6 n.4.)

> court, for any claims that arise between me and Taco Bell, its related companies
> and/or their current or former employees. Without limitation, such claims would
> include any concerning compensation, employment (including, but not limited to,
> any claims concerning sexual harassment or discrimination), or termination of
> employment. Before arbitration, I agree (i) first to present any such claims in full
> written detail to Taco Bell; (ii) next, to complete any Taco Bell internal review
> process; and (iii) finally, to complete any external administrative remedy (such as
> with the Equal Employment Opportunity Commission). In any arbitration, the
> then prevailing employment dispute resolution rules of the American Arbitration
> Association will apply, except that Taco Bell will pay the arbitrator's fees, and
> Taco Bell will pay that portion of the arbitration filing fee in excess of the similar
> court filing fee had I gone to court.

(*Id.* at ¶ 9). Ms. Nichols asserts that a "true and accurate copy of the Agreement to Arbitrate as signed by one of the individuals who worked in Colorado" is attached as Exhibit A to her declaration. (*See* Doc. No. 37-2 [Sample Agree. to Arbitrate] .)

The Nichols Declaration also contains the following statements:

> 5.      From August 6, 2008, Taco Bell has employed approximately 146
> Assistant General Managers in the State of Colorado. From August 6, 2007, Taco
> Bell has employed a total of approximately 183 Assistant General Managers in
> the State of Colorado.
>
> 6.      Beginning in early 2004, Employment Applications utilized by Taco Bell
> in Colorado contained an Agreement to Arbitrate.
>
> 7.      From a review of the records which have been maintained by Defendants
> in the ordinary course of business, I have to date identified Agreements to
> Arbitrate signed by 76 individuals who worked in Colorado at any time from
> August 6, 2007 to the present.
>
> 8.      Based on the fact that the applications for employment utilized by Taco
> Bell in Colorado beginning in early 2004 contained an Agreement to Arbitrate, it
> appears that in addition to the 76 Assistant General Mangers for whom I have
> located signed Agreements to Arbitrate, there are approximately 75 additional
> individuals who signed Applications for Employment after early, [sic] 2004 and
> are subject to Agreements to Arbitrate.

(Nichols Decl. at ¶¶ 5-8.)

In their motion, Defendants assert that "[d]ue to the confidential and personal information contained in the Employment Applications, the 76 individual copies of the Agreements to Arbitrate executed by members of the putative class are not attached to [their] Motion." (Mot. at 5 n.2.) They claim that the parties were in the process of entering into a protective order and "[o]nce an appropriate protective order is in place, Taco Bell is willing to produce copies of the 76 Agreements to Arbitrate to Plaintiff." (*Id.*) Defendants also state that it appears that Plaintiff herself executed and is subject to the Agreement to Arbitrate and, in a footnote, indicate that "Taco Bell shall submit additional information regarding those putative class members who entered into arbitration agreements with Taco Bell as discovery progresses." (*Id.* at 6 & n.3.)

In her response, Plaintiff objects to the evidentiary basis for Defendants' motion to compel. She argues that Defendants rely on untested and substantially unsupported assertions in the Nichols Declaration. (Resp. at 4.) Plaintiff asserts that the 76 purported arbitration agreements signed by putative class members are not before the court and that Plaintiff should be allowed to review the arbitration agreements Defendants seek to rely on,[5] as well as depose Ms.

---

[5] Specifically, in her response Plaintiff asserted that at that time, although the parties had exchanged Rule 26 disclosures, other formal discovery had not commenced and Defendants had indicated that they would not provide information to Plaintiff or her counsel until after entry of a protective order. (Resp. at 4.) She indicated that, eventually Defendants provided the 76 purported arbitration agreements referenced in the Nichols Declaration, "on an 'attorney's eyes only' basis" on January 11, 2011, three days before Plaintiff's response deadline. (*Id.*) Plaintiff stated that counsel had not had the opportunity to review the documents in detail but they appeared to be employment applications for various levels of employment within Taco Bell, including Team Member, Shift Leader, Assistant Manager and General Manager. (*Id.*)

6

Nichols and others regarding Defendants' records. (*Id.* at 7-9.) Plaintiff further argues that Defendants seek to rely on information that they admit they do not have—the alleged arbitration agreements in employment applications for an additional 75 individuals. Moreover, Plaintiff notes that, "for the one party that is before this Court, the Named Plaintiff, they apparently *do not have an executed arbitration agreement, since they have not put any such agreement before the Court.*" (*Id.* at 6 (emphasis in original).) Plaintiff claims that, although the Nichols Declaration provides some information regarding Defendants' business practices, Defendants cannot establish the existence of a valid arbitration agreement by relying on allegations of their purported business practices. (*Id.* at 8 (citing *Burgess v. Qwest Corp.*, 546 F. Supp. 2d 1117, 1122 (D. Or. 2008) and *Olson v. The Bon, Inc.*, 183 P.3d 359, 363-64 (Wash. Ct. App. 2008)).)

To a large extent Plaintiff's objection to the lack of evidence before the court has been resolved. On February 3, 2011, this court granted the parties' "Joint Motion for Entry of Revised Stipulation and Confidentiality Order" and the Revised Stipulation and Confidentiality Order was filed. (Doc. Nos. 47, 48, 49.) On February 18, 2011, Defendants filed "Defendants' Unopposed Submission in Further Support of Amended Motion to Compel Arbitration and Unopposed Motion to Seal Submission." (Doc. No. 50.) Defendants conferred with counsel for Plaintiff who "[took] no position on the filing of the documents with the Court" and did not oppose Defendants' request to file the documents under seal. (*Id.* at 1-2.) Concurrently with the filing of the motion, Defendants filed under seal 286 pages of documents which appear to be electronic and hand written applications for employment with Taco Bell. (Doc. No. 51.) Plaintiff did not object to the submission of this evidence, did not challenge its authenticity, and

did not seek leave to file a surrreply addressing Defendants' motion to compel arbitration in light of the evidence presented. However, Plaintiff's lack of objection does not necessarily mean that Defendants have met their burden.

In her response, Plaintiff also argues that a court order compelling arbitration would amount to an advisory opinion at this point in the litigation. (Resp. at 6.) Plaintiff contends that Defendants' motion asks the court, before certification of a class and before establishing that any putative class members actually signed an Arbitration Agreement, "to declare that *if* an individual who is ultimately a class member before this Court signed an employment application of the form referred to in the Nichols Declaration, *then* their Colorado claim *must* be referred to arbitration, *regardless* of any other circumstances that may be established." (*Id.* at 10 (emphasis in original).)

In reply to Plaintiff's argument that a ruling compelling arbitration is premature, Defendants assert that Plaintiff has misconstrued the relief Defendants seek. (Reply at 2.) Defendants state,

> Taco Bell does not seek an order stating that every member of the putative class is bound by an Agreement to Arbitrate, but instead seeks an order determining that the Agreement to Arbitrate itself is enforceable and that those putative class members ultimately found to have executed the Agreement to Arbitrate are bound by its provisions.

(*Id.*) Defendants claim that "[f]ar from constituting an 'advisory' or 'premature' ruling as Plaintiff argues, these types of decisions are frequently made by courts considering the arbitrability of claims in the context of class certification as the issue bears directly on class certification requirements and jurisdictional analysis." (*Id.* at 2-3.) Defendants also assert that

the court[6] "expressly recognized the import of the arbitrability question when it ordered briefing on the arbitration issue to occur *in advance of* class certification briefing." (*Id.* at 3 (emphasis in original).)

The court finds that any determination regarding the arbitration agreements is premature at this time. The FAA provision requiring a court to compel arbitration contemplates that the parties to the agreement are before the court. The statute provides, in pertinent part,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, . . . , would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . , the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, . . . , on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.

9 U.S.C. § 4.

---

[6] The scheduling order and briefing sequences were set by Magistrate Judge Hegarty on November 2, 2010. Later that same day, based on consent of the parties, this court was drawn to preside over this matter. (*See* Doc. Nos. 28, 30.)

The named Plaintiff is the only plaintiff before the court at this time. By filing this suit, she has chosen a judicial rather than arbitral forum to resolve her dispute with Defendants and Defendants properly could seek to compel arbitration as to Plaintiff pursuant to 9 U.S.C. § 4. However, although Defendants state in their motion that "it appears that the named plaintiff herself executed and is subject to the Agreement to Arbitrate at issue," (Mot. at 6) the Nichols Declaration does not state that Plaintiff signed an Agreement to Arbitrate and Defendants have not provided an Agreement to Arbitrate executed by Plaintiff.[7] Accordingly, Defendants have not satisfied their burden to present evidence of an enforceable arbitration agreement as to Plaintiff.

Defendants' argument that its motion "establishes that–at a minimum–76 of those putative class members have signed Arbitration Agreements," (Reply at 2) is to no avail. In order to compel arbitration pursuant to 9 U.S.C. § 4, there must be an "alleged failure, neglect, or refusal of another to arbitrate," the party allegedly in default must receive written notice of the motion to compel, and the court must hear the parties to the agreement regarding the making of the agreement.[8] None of these conditions have been satisfied at this time in this case as to the

---

[7] The court did not, and need not, painstakingly search 286 pages of electronic and handwritten employment applications, which are not subdivided or labeled in any way, in an effort to find such an application signed by Plaintiff. Defendants bear this burden.

[8] Defendants suggest that a court "has discretion to find arbitration provisions enforceable against those found to have signed them without individualized discovery from each putative class member." (Reply at 4 (citing *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 569-70 (S.D.N.Y. 2004)).) However, the Southern District of New York stated that certain arbitration agreements were enforceable and certain others were not in the context of deciding whether to certify a class, and not on a motion to compel arbitration.

putative class members.  The court finds no procedure or authority under 9 U.S.C. § 4 to compel putative class members, who are not currently before the court and, because a class has not yet been certified, have not even received notice of the litigation, to arbitrate their potential claims against Defendants.  A motion to compel arbitration is clearly not the avenue for the relief Defendants seek.

Although Defendants' motion is styled as a motion to compel arbitration, Defendants' reply suggests that what Defendants seek is in fact a declaratory judgment regarding the enforceability of the arbitration agreement as it exists in Taco Bell job applications beginning in 2004.  The Declaratory Judgment Act provides that, "[in] a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Distinguishing a proper declaratory judgment from an advisory opinion, the Supreme Court has explained that "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citation omitted).  Again, the putative class members are not currently before the court nor is there any evidence before the court of a substantial controversy regarding an arbitration agreement between Plaintiff (Defendants have not provided an arbitration agreement executed by Plaintiff) or the putative class members and Defendants.  As

such, a declaration regarding the enforceability of the proffered arbitration agreement would constitute an advisory opinion.

On at least three occasions in their reply brief Defendants assert that "courts routinely address the arbitrability of claims at this stage of class action proceedings." (*See* Reply at 2, 3.) However, Defendants do not cite a single case involving a motion to compel putative class members to arbitrate prior to certification of the class and the court is unaware of any such case. Defendants also suggest that the court-ordered briefing sequence—briefing on the arbitration issue before briefing on class certification—demonstrates that the court recognized the appropriateness of determining the enforceability of the Agreement to Arbitrate at this time. (*Id.* at 3.) However, the court notes that less than a month before the scheduling conference, after consultation with Defendants, Plaintiff submitted an unopposed motion regarding the briefing schedule for collective and class certification motions. (*See* Doc. No. 22.) Defendants raised the prospect of a motion to compel arbitration at the scheduling conference, stated that it likely would impact the briefing on class certification under Rule 23, and proposed that class certification briefing dates be triggered based on a ruling on the motion to compel arbitration. Plaintiff noted that motions to compel arbitration often involve matters requiring discovery, but did not otherwise oppose the court setting a briefing schedule for the motion to compel. Magistrate Judge Hegarty set a due date for the motion to compel arbitration without any substantive argument as to the impact of a motion to compel on class certification or the potential advisory nature of an order compelling putative class members to arbitrate. As such,

the court cannot say that the briefing schedule demonstrates recognition of the appropriateness of deciding a motion to compel arbitration as to putative class members prior to class certification.

Defendants do cite several cases in which the courts recognize, as part of their class certification analysis, that the existence of arbitration agreements can affect a plaintiff's ability to satisfy Rule 23's numerosity requirement.[9] *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n.5 (11th Cir. 1987) (noting that the presence of arbitration agreements is relevant to the numerosity requirement of Rule 23(a)(2) and directing the district court to determine whether the potential class members not subject to arbitration would be sufficient to satisfy the numerosity requirement); *Currency Conversion*, 224 F.R.D. at 569-70 (discussing the effect of arbitration agreements on class members' participation in the class in the context of motions for class certification); *Fischler v. AmSouth Corp.*, 176 F.R.D. 583, 585 (M.D. Fla. 1997) (on motion for class certification, noting that customer agreements requiring arbitration could have a significant effect on the numerosity requirement, but declining to address numerosity as it was not in dispute); *Champ v. Siegel Trading Co., Inc.*, No. 89 C 7148, 1990 WL 19984, at *7 (N.D. Ill. Feb. 27, 1990) (unpublished) (denying motion for class certification, in part because an adequate showing of numerosity was not made where class "would have to be limited to persons

---

[9] Rule 23 requires a party seeking to certify a class to establish that 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative partes will fairly and adequately protect the interests of the class. *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 481 (D. Colo. 2007); Fed. R. Civ. P. 23(a).

who did not agree to arbitration"). While recognizing that arbitration agreements can impact class certification, these cases do so as part of the Rule 23(a) analysis and do not stand for the proposition that a motion to compel arbitration or to determine the enforceability of an arbitration agreement should be resolved as to putative class members before a court considers class certification.

Finally, Defendants suggest that the enforceability of the Agreement to Arbitrate is a threshold matter, impacting "Plaintiff's bid for class certification, in particular the Court's jurisdiction over Plaintiff's state class claims and Plaintiff's burden to establish numerosity under Fed. R. Civ. P. 23(a)." (Reply at 2.) Based on the cases cited above, the court agrees that the existence of a valid arbitration agreement could affect Plaintiff's ability to satisfy the numerosity requirement of Rule 23(a). However, the court concludes that it cannot compel putative class members who are not before the court to binding arbitration or issue a declaratory judgment regarding the enforceability of the alleged arbitration agreement at issue.[10] Such declaration would constitute an advisory opinion at this time. Defendants' arguments regarding the impact of the arbitration agreement on numerosity are more appropriately made in response to a motion for class certification. Accordingly, Defendants' "Amended Motion to Compel Arbitration" (Doc. No. 37) is **DENIED**. No later than May 24, 2011, the parties shall file a joint

---

[10] It would have been appropriate for the court to consider the arbitration issue with respect to the named plaintiff, if Defendants had provided evidence of an arbitration agreement executed by her. However, Defendants did not brief , support, or argue for an order compelling Plaintiff herself to arbitrate or seeking a declaration of the enforceability of any arbitration agreement executed by Plaintiff. (*See* Resp. at 1, 4.)

status report regarding a proposed briefing schedule for motions on collective and class certification.

Dated this 10th day of May, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge