IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-01884-KMT-MEH

JACQUELYN ANN WHITTINGTON,
Individually and on behalf of all others similarly situated,

     Plaintiff,

v.

TACO BELL OF AMERICA, INC.; and
TACO BELL CORP.,

     Defendants.

---

## JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

     Plaintiff Jacquelyn Ann Whittington on behalf of herself, and all Opt-Ins (collectively "Plaintiffs"), and Taco Bell of America, Inc. and Taco Bell Corp. (collectively, "Taco Bell" or "Defendants"), have professionally settled the claims of the conditionally-certified FLSA collective action as of August 12, 2013, as reflected in the Settlement Collective Action Agreement (the "Settlement Agreement") attached as <u>Exhibit 1</u>.[1]  The settlement occurred only after the parties: (i) litigated this action for the past three years; (ii) exchanged significant discovery of all aspects of the case and had also exchanged mediation-specific discovery, including payroll and other data regarding the Plaintiffs and Defendants and (iii) conducted mediation with an experienced mediator.  The settlement, which was the product of arms-length negotiations by experienced counsel, will provide monetary compensation to all Plaintiffs and eliminate the risks both sides

---

[1] Plaintiffs' counsel is acquiring the signature of the Named Plaintiff, which the Parties will file as a supplemental exhibit on or before August 14, 2013.

would bear if this litigation continued.  The parties believe the settlement, which is memorialized in a Collective Action Settlement Agreement ("Settlement Agreement"), is fair and reasonable and should be approved.

Court approval of this FLSA collective action settlement is necessary to effectuate a valid and enforceable release of Plaintiffs' Fair Labor Standards Act ("FLSA") claims.  Where, as here, the litigation arises from a private enforcement action under the FLSA (and 29 U.S.C. §216 (b) in particular), the standard for approval is straightforward: a district court may approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA.  *Lynn's Food Stores, Inc. v. United States.,* 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697 (1945)).  Because this settlement clearly meets the applicable judicial standard, the parties respectfully request this Court's approval of this FLSA settlement.  *See* pp. 5-7, below.

## I.   FACTS AND PROCEDURAL HISTORY

On August 6, 2010, Plaintiff Jacquelyn Whittington filed a Complaint on behalf of herself and other similarly situated employees, in which she asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., arising out of an alleged failure to appropriately compensate Assistant General Managers ("AGMs") for all hours worked per workweek (Dkt. No. 1).[2]  Shortly after Plaintiffs filed suit, the parties engaged in significant discovery addressing Plaintiffs' claims that she was "similarly situated" with other putative plaintiffs.   On September 16, 2011, Plaintiffs filed a motion for conditional certification under the FLSA, seeking conditional certification of a nationwide class of

---

[2] Plaintiff also brought a class claim pursuant to the Colorado Minimum Wage Order set forth at 7 CCR § 1103-1, which was not pursued in this litigation.

AGMs (Dkt. Nos. 61 & 62).  The Court granted Plaintiffs' motion on January 10, 2012,

conditionally certifying the following collective:

> All persons who are or were formerly employed as Assistant General Managers
> at a company-owned Taco Bell restaurant(s) in any state other than California at
> any time since January 10, 2009.

(Dkt. No. 85).  Following this conditional certification, all potential collective action

members had 90 days in which to join the collective action.  Ultimately, including several

late claimants who the parties agreed to let join the action, 475 individuals filed written

consents to join the action as opt-in Plaintiffs.

Plaintiffs have aggressively litigated their claims, which they believe are

meritorious – namely, that the primary work in which Plaintiffs spent their time was non-

managerial work of the type insufficient to comply with the exemption requirements set

forth in 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.100(a).  Defendants, in turn, strongly

dispute the validity of the claims asserted against them and offer multiple defenses,

including, but not limited to: (1) evidence submitted by members of the collective action

and other AGMs substantiate the full range of managerial and supervisory duties

performed by the AGM position; (2) Department of Labor and other opinions support

Defendants' classification of the AGM position as exempt; (3) evidence submitted by

AGMs and elicited from members of the collective action demonstrates the differences

in individual performance of the position such that decertification is appropriate; (4)

Defendants dispute Plaintiffs' computation of wages owed because they are not

premised on a fluctuating work week and their expert's computations suffer from other

formulaic deficiencies; and (5) Defendants cannot be liable for liquidated damages

because they at all times acted in good faith and did not willfully or knowingly violate

any provision of the FLSA.  Both sides to the settlement recognize that all of these points could be subjected to extended dispute and litigation.

On April 8, 2013, the parties mediated this matter with mediator Judge Edward Nottingham.  After a full day of mediation, the parties were unable to reach an agreement.  Counsel for the parties, however, remained engaged in negotiation efforts over the next several months.  After exchanging several settlement demands and offers, and after extended discussion of the claims, the parties arrived at an agreement to settle the claims in the lawsuit, which, as noted, involve numerous vigorously contested legal and factual issues.

## II.    SETTLEMENT TERMS

The Settlement Agreement provides that, for settlement purposes only, Defendants will agree not to challenge, disturb, or otherwise seek modification or decertification of the collective action conditionally certified by this Court's Order dated January 10, 2012, consisting of Plaintiff and 475 opt-in plaintiffs who have filed written consents to join the lawsuit (the "Settlement Collective").  (*See* Exhibit 1 at §§ 1, 3(a).) The terms of the Settlement Agreement provide generally for a fair and reasonable structure to the Settlement Collective and, if approved, their attorneys.

While maintaining its general denial of Plaintiffs' claims, Taco Bell agrees to pay a Total Settlement Sum of $2,490,000.00.  (*See id.* § 2.)  After subtracting the administrative costs associated with the Settlement, including attorneys' fees for the lawyers representing the Settlement Collective and a service payment to the Named Plaintiff, the remaining money in the Settlement fund will be allocated as set forth in Section 4(f) so that each member of the Settlement Collective will receive a share of the Settlement based on the number of weeks that he or she worked as a salaried AGM as

compared with other eligible class members during the class period.  (*Id*. § 4(f).)  Based

on the calculations set forth in the Settlement Agreement, the average gross settlement

amount allocated to each class member is approximately $5,000.  Payments in the form

of a check will be mailed by the Settlement Administrator to each member of the

Settlement Collective within four months of the Settlement Notice. (*Id*. § 4(g).)

      In exchange, each member of the Settlement Collective has agreed to dismiss

his or her FLSA claims, as well as any other wage claims that he or she may have

against Defendants, for any occurrence predating the Effective Date.  (*Id*. § 6.)  The

Parties jointly request that this Court approve the terms of the Settlement Agreement.

## III.   ARGUMENT AND AUTHORITIES

### A.   The Court May Approve the Proposed Collective Action Settlement.

      Proposed settlements under the FLSA require court approval to effectuate a valid

release.  *See Lynn's Food Stores,* 679 F.2d at 1353.  Specifically, wage claims under

the FLSA must either be settled by the Secretary of Labor or be settled under a private

enforcement action under 29 U.S.C. § 216(c) that is approved by a District Court.  *Id.*

at 1353.  When the latter option is proposed, as it is here, the Court may enter a

stipulated judgment, "after scrutinizing the settlement for fairness."  *Id.* (citing *Schulte,*

*Inc. v. Gangi,* 328 U.S. 108 (1946)); *Peterson v. Mortg. Sources, Corp.,* 08–2660–KHV,

2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011).

      The Court's inquiry about the fairness of an FLSA settlement arising from a

private enforcement action is two-pronged.[3]  *First*, the Court should be satisfied that the

settlement was the product of "contested litigation."  *Second*, the Court should inquire

---

[3] Inasmuch as this is not a class action settlement, it is not a settlement whose approval
is subject to Federal Rule of Civil Procedure 23(g) and the provisions applicable to such
a settlement are not herein addressed.

about whether the settlement involved a fair and reasonable resolution of a bona fide dispute between the parties under the FLSA.  Typically, courts rely on the adversary nature of a contested FLSA case which resulted in a settlement as indicia of fairness. *See Lynn's Food Stores,* 679 F.2d at 1354.  If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *See id*.

Additionally, the FLSA entitles prevailing plaintiffs to recover "a reasonable attorney's fee ... and costs of the action." *See*, *e.g., Gray v. Phillips Petroleum Co.,* 971 F.2d 591, 592 (10th Cir. 1992) (quoting 29 U.S.C. § 216(b)).  For purposes of attorneys' fees, plaintiffs are considered a prevailing party if they succeed on any significant issue in litigation which achieves some of the benefit they sought in bringing suit. *Jackson v. Austin,* 267 F. Supp. 2d 1059, 1063 (D. Kan. 2003).  Though the Court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory. *Wright v. U-Let-Us Skycap Servs., Inc.,* 648 F. Supp. 1216, 1218 (D. Colo. 1986).

District courts routinely approve settlements reached in FLSA collective actions. *See*, *e.g., Villeda v. Landry's Rest., Inc.,* No. H-08-2287, 2009 WL 3233405 (S.D. Tex. Oct. 7, 2009); *Ruiz v. GVMS, Inc.,* No. H-08-1692, 2009 WL 3157349 (S.D. Tex. Sept. 25, 2009).  Based on the facts presented as well as the consistency of approval of other similar FLSA settlements, this Court should readily conclude the parties' settlement is a reasonable resolution of a bona fide dispute in contested litigation.

**B.      The Proposed Collective Action Settlement Is the Product of Contested Litigation.**

There is no question the proposed settlement meets the first prong of the relevant inquiry.  It is the product of contested litigation.  In their Complaint, Plaintiffs made detailed factual allegations describing Defendants' allegedly unlawful misclassification of the AGM position.  In their motions to dismiss and answer, Defendants denied Plaintiffs' material factual allegations and asserted a number of affirmative defenses that they argued would bar Plaintiffs' claims in whole, or in part.

During this litigation, the parties conducted their own factual investigations regarding Plaintiffs' allegations, exchanged voluminous quantities of documents and discovery responses, including employment and payroll data, and retained experts to assess damages and other case issues.  These efforts required substantial separate analysis and discovery compliance work by the parties, as well as dozens of conferences among the parties to discuss related issues.  The efforts also led to the filing of various contested motions with the Court, including several that were pending at the time of settlement.

In addition to their factual investigations, the parties also analyzed multiple legal issues implicated in this case, including whether and how the concept of a fluctuating workweek might be relevant to the claims, Department of Labor and other guidance and opinions concerning the role and classification of other positions that might be analogous to the AGM position at issue, application of the doctrines of good faith and willfulness to Defendants' conduct, as well as detailed consideration of other of Defendants' various affirmative defenses.

**C.      The Proposed Collective Action Settlement Reflects a Fair and Reasonable Resolution of a Bona Fide Dispute Between the Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues.  The first is confirming the existence of a bona fide dispute between the parties under the FLSA.  The second involves a review of the fairness and reasonableness of the proposed settlement.  The Court should conclude both issues implicated by this second prong of the Court's settlement approval inquiry are satisfied.

1.      <u>A Bona Fide Dispute Exists Between the Parties</u>.

Plaintiffs alleged Defendants violated the FLSA because they misclassified the AGM position as exempt, entitling Plaintiffs to damages and liquidated damages. Plaintiffs provided, among other materials, specific discovery responses from hundreds of Opt-Ins to support their claims.  Defendants denied Plaintiffs' allegations, arguing that they properly classified the AGM position, and produced numerous declarations from current or former AGMs supporting the range of managerial and supervisory duties they performed as AGMs, as well as other testimony and documents which support, according to Defendants, that no FLSA violation occurred.  The parties also maintain bona fide disputes as to what, if anything, Plaintiffs are owed with respect to their claim for unpaid overtime and missed meal and rest breaks, as well as the amount of damages Defendants are liable for, if any, including liquidated damages.

If Plaintiffs' allegations were ultimately adjudged to be correct, Defendants would be faced with the possibility of a significant monetary verdict in favor of Plaintiffs, as well as an obligation to pay litigation fees and costs incurred by Plaintiffs and Defendants alike.  If Defendants' arguments were adjudged to be correct, Plaintiffs would face the

possibility of no recovery of any kind.  Accordingly, the Court should readily conclude that a bona fide dispute between the parties existed.

>        2.        The Proposed Settlement is Fair and Reasonable.

This settlement was the product of arm's-length negotiations by experienced counsel and has the salutary effect of (i) providing substantial relief to all Plaintiffs, and (ii) eliminating inherent risks both sides would bear if this complex litigation continued to resolution on the merits.  A day-long mediation with a qualified mediator (former Judge Nottingham) established a framework which ultimately allowed the parties to bridge a significant gap between their respective settlement positions and to obtain the resolution described above.  Under these circumstances, a presumption of fairness should attach to the proposed settlement.  *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Secs. Litig.,* 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court[ ] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

Moreover, several additional relevant factors confirm the proposed settlement is fair and reasonable.

>        a.        ***Public Policy Favors Settlements.***

Public policy favors settlements. This is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost, and

rigor of protracted litigation.  *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354

(recognizing policy of encouraging settlement of FLSA litigation); *Petrovic v. Amoco Oil*

*Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement]

agreements, and courts should approach them with a presumption in their favor.")

(quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371,

1388 (8th Cir. 1990)).

> **b.      *Substantial Obstacles Exist If the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief.***

As outlined above, the parties disagree about the merits of Plaintiffs' claims and

the viability of Defendants' defenses.  If litigation had continued, before they would have

been able to present their claims at trial, Plaintiffs would have faced many obstacles,

including Defendants' right to depose up to 48 Plaintiffs, Defendants' anticipated attacks

on the viability of Plaintiffs' expert testimony, Defendants' anticipated dispositive

motions (including on the issues of classification, application of the fluctuating workweek

to calculate damages, and the doctrines of good faith and willfulness), and Defendants'

motion for decertification.  Further, even if Plaintiffs prevailed on liability issues, Plaintiffs

faced considerable obstacles in proving both the nature and extent of Plaintiffs'

individual damages.  Plaintiffs also would have been required to prevail at trial.

In addition, the proposed settlement brings substantial value to each of the

Plaintiffs.  The monetary distribution to the Settlement Collective directly compensates

each member consistent with the claims asserted in this case.  Although the range of

potential recovery at trial could possibly have been greater, it is equally possible the

potential recovery would have been less, or nothing at all.  In fact, as discussed at

pages 12-13, below, the settlement here is well within the range of other, comparable

recent settlements of FLSA retail chain misclassification claims.  Consequently, this settlement brings Plaintiffs value now, as opposed to years from now, and provides certainty regarding the outcome of this matter.  A significant factor weighing in favor of the Court's approval of the proposed settlement is that substantial benefits will be immediately received by the Plaintiffs and made certain by the settlement.  *See In re BankAmerica,* 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they[ ] should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation.  In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotations omitted)).

### c.    This Was a Complex and Potentially Expensive and Lengthy Case.

This case is complex as to both liability and damages.  Many complex issues of fact and law remain unanswered and would have to be resolved at, or before, trial.  Trial would be lengthy, costly and complex.  Plaintiffs would need to provide testimony sufficient to establish Defendants' liability to Plaintiffs.  Proof of damages would have required testimony and evidence supported by detailed records of time worked over the course of the class period.  Post-judgment appeals would be likely.  Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed settlement.

### d.    The Parties and Their Counsel Support the Settlement.

After thorough investigations of the facts and law, the parties have gained a comprehensive knowledge of Plaintiffs' claims and Defendants' defenses.  Additionally,

the parties have ample evidence necessary to an informed assessment of the proposed

settlement.  Based on their knowledge of the case and the applicable law, as well as

their experience in FLSA actions, the parties' counsel believe that the settlement is fair,

reasonable and adequate.  *In re BankAmerica,* 210 F.R.D. at 702 ("Although the Court

is not bound by the counsel's opinion, their opinion is nonetheless entitled to great

weight.").

Plaintiffs' Counsel only agreed to the settlement of this case after obtaining what

they believe is a settlement that amply compensates Plaintiffs, while also taking into

consideration that risks faced in continuing the litigation could easily have outweighed

the possible benefits or a trial on the merits.  That there are risks in taking a FLSA

collective action case to trial is undeniable.  In approving a FLSA settlement regarding

retail workers in which the Klafter Olsen firm represented plaintiffs, District Judge Jones

in the Middle District of Pennsylvania earlier this year wrote that "[i]t is undisputed that

copious risks abound with respect to maintaining this action and establishing liability."

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7,

2013).  The risks recognized by Judge Jones, and in other cases, include the issues of

maintaining certification through to judgment (in this area of the law, it is not unknown

for a case to be decertified following trial, *see*, *e.g.*, *Johnson v. Big Lots Stores, Inc.*,

561 F. Supp. 2d 567 (E.D. La. 2008) (decertifying assistant store manager collective

action after trial)), proving liability, and addressing the contentious issue of the proper

method of assessing damages (including how to address computations based on the

fluctuating workweek versus regular pay versus full time and one-half).  *Rite Aid Corp.*,

WL 84928, at *9-10 ($20.9 million retail misclassification class and collective action

settlement where Mr. Lesser was lead class counsel). The average gross settlement amount made available to claimants in the *Rite-Aid* case was $1,845, and Judge Jones noted that amount represented "an excellent and optimal settlement award for the Class Members." *Id.* at *11.

Here, the average gross settlement amount allocated to each collective settlement member is estimated to be approximately $5,000.  This average gross settlement takes into account the full amount of attorneys' fees that Plaintiffs' counsel will seek, Plaintiffs' litigation costs, anticipated notice and claims administration fees, and a modest service award to Jacquelyn Whittington.[4]  Although every case is different, and the settlement in this case was tailored to the parties' assessment of Plaintiffs' claims here, the gross recovery afforded Plaintiffs in this case is, by comparison to another recent case of Klafter Olsen & Lesser LLP's, positive for Plaintiffs.  In that case, FLSA claims brought by assistant store managers settled for $34 million and the average claimant's gross recovery was $1,760.  District Judge McConnell last year termed that result "magnificent" at the final approval hearing.  Order Granting Final Approval, *Nash v. CVS Caremark Corp.*, No. 1:09-cv-00079 (D.R.I. Apr.

---

[4] These additional amounts are in line with the amounts in the other cases referenced in this section.  The claim administration fee, specifically, is to be no more than $85,000.00 based upon a binding estimate provided by the experienced claim administrator the Garden City Group, which shall cover all aspects of the administration, including determining the amounts of each collective settlement member's recovery, the amount of taxes to be withheld for each, verifying the mailing addresses of the settlement collective members through a database, the printing and sending of individualized notices, setting up a telephone line for inquiries and a post office box for receiving any returned notices or opt-outs, tracing returned notices, setting up a qualified settlement fund, printing the checks and paying the collective action members, sending tax forms and paying the employment taxes, and generally responding to inquiries and administering the settlement.   In the experience of Plaintiffs' Counsel this is a reasonable binding estimate and the Garden City Group is an exceptionally reliable claims administrator.

9, 2012).  The gross recoveries in other recent chain store misclassification settlements in which the same counsel have been involved have been less than the result obtained in this settlement.  *See* Order Granting Final Approval, *Alli v. Boston Market Corp.*, No. 10-cv-0004 (D. Conn. Apr. 17, 2012) (final approval obtained for $3 million for 1,921 class members in restaurant assistant store manager case, for gross average proceeds of $1,561); Order Granting Final Approval, *Jenkins v. Sports Authority*, No. 09-cv-2224 (E.D.N.Y. Sept. 30, 2011) (final approval obtained for $990,000 settlement for class of 559 co-managers in retail store case, for gross average proceeds of $1,771); Order Granting Final Approval, *Caissie v. BJ's Wholesale Club*, No. 08-cv-30220 (D. Mass. June 24, 2010) (final approval obtained June 24, 2010 for $9.15 million settlement for class of 2,803 retail store "mid-managers," for gross average proceeds of $3,264).

Accordingly, Plaintiffs and Defendants respectfully suggest this Court should conclude the proposed settlement reflects a fair and reasonable resolution of a bona fide dispute under the FLSA and approve the settlement.

**D.    The Requests for Attorneys' Fees And A Service Award Are Fair and Reasonable.**

Plaintiffs' Counsel requests that the Court approve the attorneys' fees included in the Settlement Agreement, which is 33 1/3% of the settlement fund amount.  The percentage of the fee requested here is entirely in line with precedent in this area.  *See*, *e.g.*, *Lerma v. Wal-Mart Stores, Inc.*, No. CJ-2001-1395 (Okl. Cir., Cleveland Cnty. Mar. 16, 2001) (40% fee in wage and hour settlement of $42.5 million); *Barnwell v. Corrections Corp. of Am.*, No. 08-02151 (D. Kan. Feb. 12, 2009) (33% fee in $7 million wage and hour settlement); *see also Rite Aid Corp.,* 2013 WL 84928 at *12-13 (addressing fees and precedents in this area and finding 32% fee reasonable); *Clark. v.*

14

*Ecolab Inc.*, Nos. 07-CIV-8623, 04-CIV-4488, 06-CIV-5672, 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) ("An award of one-third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases."). Notably, the request is also considerably less than the lodestar incurred by Plaintiffs' counsel for litigation of this case. Their combined lodestar to the date of settlement of almost $2 million (which does not include their costs), based on counsel's normal billing rates, dwarves what the request for attorneys' fees of 33% will recover. Plaintiff's counsel were required to expend fees of that magnitude in litigating this case through discovery and almost to trial, including because of the efforts required in obtaining individualized discovery responses to numerous interrogatories and requests for admission from each Plaintiff. Plaintiff's counsel will thus receive a multiple of only about 0.40 times their fees incurred to date. Most assuredly, this is a reasonable fee, particularly given the quality of the result obtained for the collective action settlement members, as discussed. *See Rite Aid Corp.,* 2013 WL 84928 at *13 (addressing cross-check multiplier and finding positive multiplier appropriate in similar case). Approval of Plaintiffs' Counsel's actual incurred litigation costs of $153,496.95, which were all necessarily incurred in the prosecution of this action and which are on the books and records of Plaintiffs' Counsel's firms, is also appropriate and reasonable. *Id.*; *see also, e.g In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund.").

In addition, the payment of a service bonus in the amount of $7,500 to the Named Plaintiff, Ms. Whittington, is also appropriate, if not modest, and also within the

line of precedent.  *See id.*; *Reyes v. Altamarea Grp., LLC.*, 2011 WL 4599822, at *9

(S.D.N.Y. Aug. 16, 2011) (granting an award of $15,000 to three class representatives

representing 15% of the settlement amount in employment class action).

## IV.   <u>CONCLUSION</u>

This collective action settlement was reached as a result of contested litigation

and resolves a bona fide dispute between the parties under the FLSA.  The parties

engaged in lengthy investigation of the pertinent facts and law and mediated this case

before finally reaching settlement.  The parties believe the settlement is fair, reasonable

and adequate, and provides Plaintiffs with significant relief in a hotly contested matter.

For these reasons, and those set forth above, the parties respectfully suggest the Court

should approve the Settlement.

A proposed form of Approval Order accompanies this Motion.

Respectfully submitted this 12th day of August, 2013.

/s/ Steven M. Feder
Steven M. Feder
FEDER LAW FIRM
Equitable Building
730 17th Street, Suite 550
Denver, CO 80208
(303) 221-5599 (Tel.)
(303) 221-7357 (Fax)
steve@federlawfirm.com

Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
(914) 934-9200 (Tel.)
(914) 934-9220 (Fax)
frudich@klafterolsen.com
slesser@klafterolsen.com

Silvia A. Strikis
KELLOGG, HUBER, HANSEN, TODD,
   EVANS & FIGEL, PLLC
1615 M Street, NW
Suite 400
Washington, DC 20036
(202) 326-7900 (Tel.)
(202) 326-7999 (Fax)
sstrikis@khhte.com


**Attorneys for Plaintiff
and Settlement Collective**

/s/ Brian L. Duffy
Brian Duffy
Naomi Beer
Jeanette Brook
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
(303) 572-6500 (Tel.)
(303) 572-6540 (Fax)
DuffyB@gtlaw.com
BeerN@gtlaw.com
BrookJ@gtlaw.com

**Attorneys for Defendants Taco Bell of
America, Inc. and Taco Bell Corp.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 12, 2013, a true and correct copy of the

foregoing JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

was electronically filed with the Clerk of the court using the CM/ECF system which will

send notification of such filing to the following:

Steven M. Feder
FEDER LAW FIRM
Equitable Building
730 17th Street, Suite 550
Denver, CO 80208
(303) 221-5599 (Tel.)
(303) 221-7357 (Fax)
steve@federlawfirm.com

Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
(914) 934-9200 (Tel.)
(914) 934-9220 (Fax)
frudich@klafterolsen.com
slesser@klafterolsen.com

Silvia A. Strikis
KELLOGG, HUBER, HANSEN, TODD,
   EVANS & FIGEL, PLLC
1615 M Street, NW
Suite 400
Washington, DC 20036
(202) 326-7900 (Tel.)
(202) 326-7999 (Fax)
sstrikis@khhte.com

**Attorneys for Plaintiff
and Settlement Collective**

Brian Duffy
Naomi Beer
Jeanette Brook
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
(303) 572-6500 (Tel.)
(303) 572-6540 (Fax)
DuffyB@gtlaw.com
BeerN@gtlaw.com
BrookJ@gtlaw.com

**Attorneys for Defendants Taco Bell of
America, Inc. and Taco Bell Corp.**

_/s/ Karen R. Loveland_
Karen R. Loveland