# EXHIBIT 1

to

JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-01884-KMT-MEH

JACQUELYN ANN WHITTINGTON,
Individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

TACO BELL OF AMERICA, INC.; and
TACO BELL CORP.,

      Defendants.

---

## COLLECTIVE ACTION SETTLEMENT AGREEMENT

---

This Collective Action Settlement Agreement ("Settlement Agreement" or "Agreement") is made this 12th day of August, 2013, by and between Plaintiff Jacquelyn Ann Whittington on behalf of herself, and all Opt-Ins (collectively "Plaintiffs"), and Taco Bell of America, Inc. and Taco Bell Corp. (collectively, "Taco Bell" or "Defendants"), (Taco Bell, Whittington and the Opt-ins are collectively referred to herein as the "Parties").

## RECITALS AND BACKGROUND

1.    Plaintiff Whittington commenced litigation in the U.S. District Court for the District of Colorado captioned *Jacquelyn Ann Whittington, Individually and on Behalf of All Other Persons Similarly Situated v. Yum! Brands, Inc., Taco Bell of America, Inc., and Taco Bell Corp.,* Civil Action No. 1:10-cv-01884-KMT-MEH, in which she asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Colorado Minimum Wage Order set forth at 7 CCR § 1103-1, arising out of an alleged failure to appropriately compensate Assistant General Managers ("AGMs") for all hours worked per workweek.

2.    Plaintiff Whittington and her counsel, the law firms of Klafter Olsen & Lesser LLP; Kellogg, Huber, Hanson Todd, Evans & Figel, PLLC; and the Feder Law Firm, brought the claims asserted in the Action as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of Plaintiff and other current and former employees who worked for Defendants as AGMs.

3.      Thereafter, the Parties engaged in significant discovery and case evaluation relating to Plaintiffs' claims.

4.      On September 16, 2011, Plaintiff Whittington filed a Motion for Conditional Certification (Dkt. Nos. 61 & 62), seeking conditional certification of a nationwide collective of individuals who had been employed by Defendants as exempt employees in the position of AGM within the prior three years.  On January 10, 2012, the Court granted Plaintiff's Motion for Conditional Certification (Dkt. No. 85).  The Court conditionally certified a collective of all persons who are or were formerly employed as Assistant General Managers at a company-owned Taco Bell restaurant(s) in any state other than California at any time since January 10, 2009. As of this date, 475 individuals have filed consents to join the Action as Opt-Ins asserting FLSA claims against Defendants.

5.      Both prior to and following the Court's decision on Plaintiffs' Motion for Conditional Certification, the Parties engaged in substantial settlement discussion, including a full-day mediation with Judge Edward Nottingham on April 8, 2013.

6.      On June 14, 2013, the Parties' ongoing settlement negotiations culminated in this Settlement Agreement.

7.      Plaintiffs' Counsel has conducted a thorough investigation of the claims asserted against Defendants in the Action.  Based on their independent investigation and evaluation, Plaintiffs' Counsel believes that the settlement with Defendants for the consideration of and on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and is in the best interest of Plaintiff Whittington and Opt-Ins in light of all known facts and circumstances, including the risk of delay, defenses asserted by Defendants, and numerous potential certification and appellate issues.

8.      This Settlement Agreement is contingent upon the approval of the Court and the satisfaction of the other terms set forth in this Agreement.  Defendants do not waive, and instead expressly reserve, their rights to move for decertification of the conditionally-certified collective, or to challenge the propriety of final certification for any purpose, should the Court not approve this Settlement Agreement and not enter an Approval Order.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

## DEFINITIONS

**Action** means the case filed in the United States District Court for the District of Colorado, captioned *Jaquelyn Ann Whittington, Individually and on Behalf of All Other Persons Similarly Situated v. Yum! Brands, Inc., Taco Bell of America, Inc., and Taco Bell Corp.*, Civil Action No. 1:10-cv-01884-KMT-MEH.

**Approval Order** refers to the order of the Court in the form of <u>Exhibit A</u> hereto: (i) exercising jurisdiction over the claims and Parties alleged in Plaintiff's operative Complaint and the implementation and administration of this Settlement Agreement; (ii) granting approval of this Settlement Agreement on the terms provided herein (or as the same may be modified by subsequent mutual written agreement of the Parties), adjudicating such terms to be adequate, fair, and reasonable; (iii) appointing Plaintiff Whittington as the Representative Plaintiff who, together with Plaintiffs' Counsel, shall be authorized to act on behalf of the Plaintiff, Opt-ins, and Final Settlement Collective Members with respect to the Action and this Settlement Agreement; (iv) approving the Settlement Notice and authorizing the mailing of the Settlement Notice to the Opt-ins; (v) appointing a Settlement Administrator chosen by Plaintiffs' Counsel; (vi) setting a deadline for the Request for Exclusion period; (vii) dismissing the Action on the merits and with prejudice and barring all Final Settlement Collective Action Members from prosecuting Released Claims against Released Persons; and (viii) retaining jurisdiction to enforce the Settlement Agreement.

**Court** means the Court having jurisdiction over the Action, at any stage, presently the United States District Court for the District of Colorado.

**Defendants** or **Taco Bell** means Taco Bell of America, Inc. and Taco Bell Corp.

**Effective Date** shall mean the later of the following dates:

(A)    If there is no appeal of the Approval Order, the day after the deadline for taking an appeal has passed; or

(B)    If there is an appeal of the Approval Order, the day after all appeals are resolved in favor of the settlement.

**Final Settlement Collective Action Member** means any member of the Settlement Collective who does not file a Request for Exclusion within the Request for Exclusion Deadline.

**Individual Settlement Amount(s)** means the portion of the Net Settlement Fund distributable to or on behalf of each Final Settlement Collective Action Member.

**Named Plaintiff Service Payment** is an amount not to exceed Seven Thousand Five Hundred Dollars ($7,500.00) for the Plaintiff, which, to the extent allowed by the Court, shall be paid or allocated from the Total Settlement Amount in recognition of the time and effort on behalf of the Opt-Ins and the Settlement Collective Members.

**Net Settlement Amount** means the remainder of the Total Settlement Amount after deductions for (1) the Settlement Administrator's fees and costs; (2) Court approved attorneys' fees, costs and disbursements for the Plaintiffs' Counsel; (3) a Named Plaintiff Service Payment; and (4) a Fifty Thousand Dollar ($50,000.00) Reserve Fund, as described below.

3

**Opt-Ins** means those individuals who filed consent-to-join forms in the Action, reflected on the Court's docket.

**Parties** means the Plaintiff, Opt-Ins and Taco Bell.

**Plaintiff** means Jacquelyn Ann Whittington.

**Plaintiffs' Counsel** means the law firms of Klafter Olsen & Lesser LLP; Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC; and the Feder Law Firm.

**Plaintiffs' Counsel's Fees** means the attorneys' fees that Plaintiffs' Counsel will request from the Court, in an amount that shall not exceed Thirty Three and One-Third Percent (33 1/3%) of the Total Settlement Amount.

**Qualified Settlement Fund or Account** means the non-interest bearing escrow account established by the Settlement Administrator, under Section 468B of the Internal Revenue Code, for deposit of the Total Settlement Amount paid by Defendants.  The Account will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Approval Order.  In the event that the Effective Date does not occur for any reason, or the Settlement Agreement is terminated pursuant to Section 7, all funds remaining in the Account will be returned to Defendants.

**Released Parties** means Defendants, along with their past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, joint ventures, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of their past, present, and future officers, directors, members, fiduciaries, insurers, trustees, agents, employees, attorneys, agents, contractors, representatives, benefit plans, divisions, units, branches, and other affiliated parties.

**Request for Exclusion Deadline** means that date that is thirty (30) days after the date on which the Settlement Administrator first mails the Settlement Notice to the Settlement Collective.  Requests for Exclusions shall be considered timely if postmarked on or before the Request for Exclusion Deadline.

**Settlement Administrator** means Garden City Group, who was selected and retained by Plaintiffs' Counsel, and who shall be responsible for administration of the settlement, including but not limited to the express administrative responsibilities assigned to the Settlement Administrator by this Settlement Agreement.

**Settlement Agreement** means this Collective Action Settlement Agreement.

**Settlement Checks** means checks issued to the Final Settlement Collective Action Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

4

**Settlement Collective** means (a) the Named Plaintiff and (b) the Opt-ins who filed a written consent to join the Action as members of the collective conditionally certified by the Court on January 10, 2012.

**Settlement Notice** refers to the notice in the form of <u>Exhibit B</u> hereto, to be directed to the Settlement Collective, to inform them of the settlement of the Action.

**Total Settlement Amount** means Two Million Four Hundred and Ninety Thousand Dollars ($2,490,000.00), which Defendants will pay to settle this Action.

## TERMS OF SETTLEMENT

1. ## No Admission of Liability or Concession as to the Merits

   Defendants expressly deny any wrongdoing or any violation of state or federal law as alleged in the Action.  By entering into the Settlement Agreement, Defendants do not admit any liability or wrongdoing and expressly deny the same. It is expressly understood and agreed by the Parties that the Settlement Agreement is being entered into by Defendants solely for the purpose of avoiding the costs and disruption of ongoing litigation and resolving the claims asserted in the Action on the terms set forth herein.  Nothing in the Settlement Agreement, the settlement proposals exchanged by the Parties, or any motions filed or Orders entered pursuant to the Settlement Agreement, may be construed or deemed as an admission by Defendants of any liability, culpability, negligence, or wrongdoing, and the Settlement Agreement, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the Settlement Agreement.

2. ## Total Settlement Amount

   (a) **Total Settlement Amount**.  Defendants agree to pay a total sum of Two Million Four Hundred and Ninety Thousand Dollars ($2,490,000.00) in order to fully and finally resolve the Action in its entirety.  The Total Settlement Amount is inclusive of Plaintiffs' Counsel's Fees; Plaintiffs' Counsel's litigation costs and disbursements; Administrative Costs; interest; back wages; liquidated/statutory damages; and the Named Plaintiff Service Payment, if any.  In addition, the Total Settlement Amount will cover the cost of settlement administration.  Finally, the Total Settlement Amount will cover the full amount of the Final Settlement Collective Action Members' W-2 withholdings (and state/local withholdings if applicable), and the employer's share of any payroll taxes on any back wage payments made to the Final Settlement Collective Action Members.

(b)   **Net Settlement Amount**.  The Total Settlement Amount less the items listed in this Section 2(c), (d), (e), and (f), is defined as the "Net Settlement Amount."

(c)   **Attorneys' Fees, Costs, and Expenses**.  All Parties will bear their own costs, expenses, and attorneys' fees associated with the Action except as otherwise expressly provided in this Settlement Agreement.  Plaintiffs' Counsel, Plaintiffs, and Opt-Ins will ask the Court to award Plaintiffs' Counsel Fees and a Named Plaintiff Service Payment solely out of the Total Settlement Amount.

(d)   **Plaintiffs' Counsel's Fees**.  In conjunction with the Joint Motion for Approval of the Settlement, Plaintiffs' Counsel shall make, and Taco Bell agrees not to oppose, an application for attorneys' fees and costs that does not exceed thirty-three and one-third percent (33 1/3%) of the Total Settlement Amount for fees and costs of no more than $154,000.00.  Any attorneys' fees and costs awarded in conjunction with the Parties' Settlement shall be paid from the Total Settlement Amount and shall reduce the Settlement Amount payable to the Final Settlement Collective Action Members.

(e)   **Named Plaintiff Service Payment**.  In conjunction with the Joint Motion for Approval of the Settlement, Plaintiffs' Counsel may petition the Court for a Named Plaintiff Service Payment.  Any Named Plaintiff Service Payment awarded to Plaintiff shall be paid from the Total Settlement Amount and shall reduce the Net Settlement Amount payable to Final Settlement Collective Action Members and shall be in addition to payments that she shall receive as a member of the Settlement Collective Action, pursuant to Section 4.  Any such service payment awarded by the Court shall be distributed by the Settlement Administrator in a separate check mailed contemporaneously with the mailing of checks pursuant to Section 4 and shall be reported to state and federal taxing authorities as non-wage income on IRS Form 1099.  Defendants will not oppose any request by Plaintiffs' Counsel for service payment up to Seven Thousand Five Hundred Dollars ($7,500.00).

(f)   **Costs of Settlement Administration.** Plaintiffs' Counsel will be responsible for selecting and retaining the Settlement Administrator. The Settlement Administrator will be responsible for disseminating Settlement Notices to Opt-ins, establishing a toll-free hotline staffed by live operators to respond to inquiries by Opt-Ins regarding the Settlement; establishing and maintaining a website with links to a sample form of Notice, and containing a mutually agreed-upon list of frequently asked questions and answers for Opt-ins; identifying the Final Settlement Collective Action Members; calculating settlement payments due to Final Settlement

Collective Action Members, distribution of Settlement Checks from the Net Settlement Amount to Final Settlement Collective Action Members; reporting taxes related to Settlement; providing notices of the Parties' Settlement to governmental authorities as required by law; calculating employee and employer payroll taxes; advising Taco Bell of and setting aside the amount of Employer Payroll Taxes into the Account to cover Defendants' share of such taxes; and resolving disputes submitted by Final Settlement Collective Action Members concerning their workweeks. The costs of administering the Parties' Settlement, including the fees and costs paid to the Settlement Administrator, shall be paid from the Total Settlement Amount and shall reduce the Net Settlement Amount payable to Final Settlement Collective Action Members. Plaintiffs' Counsel's chosen Settlement Administrator, The Garden City Group, has provided a binding estimate of $85,000.00 for fees and costs for all services to be provided in conjunction with the Parties' settlement and this Agreement (the "Administrative Costs").

3.    **Collective Action Settlement**

(a)    **No Admission**.  Defendants stipulate for settlement purposes not to challenge, disturb, or otherwise seek modification or decertification of the Settlement Collective but do not waive, and instead expressly reserve, their right to challenge the propriety of conditional or class certification for any purpose as if this Agreement had not been entered into by the Parties, if the Court does not approve the Settlement, or the Effective Date does not occur.  The Parties agree that in not challenging, disturbing, or otherwise seeking modification or decertification of the Settlement Collective, the Defendants are not in any way admitting that class or collective certification is proper in this, or any other wage and hour litigation against Defendants.  The Parties further agree that, other than to effectuate the Settlement of this Action in this jurisdiction, all documents related to the Settlement, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, shall not be admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including, without limitation, any wage and hour litigation, or any other litigation, against any of the Released Parties.

(b)    **Effect of Non-Approval**.  In the event that, for any reason, the Court does not approve the Settlement, the Effective Date does not occur, or the Settlement Agreement is terminated pursuant to Section 7, the Parties' agreement not to challenge, disturb, or otherwise seek modification or decertification of the collective action shall be void and of no effect, and shall not be used for any purpose whatsoever in any further proceeding(s) in the Action or in any other lawsuit asserting the same or similar claims

7

and causes of action and the Parties will be returned to their respective positions *nunc pro tunc* as of June 14, 2013, the date on which they reached an agreement in principle to settle this litigation.

4.    **Settlement Approval, Identification of Settlement Collective, and Settlement Consideration**

(a)    **Court Approval of Settlement**.  Within seven (7) days after the Settlement Agreement is executed by Plaintiffs, Defendants, and counsel for the Parties, the Parties shall submit this Settlement Agreement (including the Settlement Notice attached hereto) to the Court for approval and shall jointly request entry of the Approval Order and entry of judgment dismissing the Action with prejudice utilizing a mutually-acceptable form of motion, attached as Exhibit C (the "Joint Motion").  The Parties agree to use their best efforts to secure an Approval Order from the Court in the form of Exhibit A; however, the Parties agree that if the Court does not approve any material term in the Parties' Joint Motion or requires as a condition to granting the Joint Motion any term that effects a material change in this Agreement, this Agreement may be voided at either Party's option.  The Parties further agree that Defendants being required to pay any amount greater than the amount specified in Section 2(a) shall be deemed a material change.  The Parties further agree that any ruling that the Court may make regarding Plaintiffs' Counsel's motion or petition for an award of attorneys' fees and costs pursuant to Section 2(d) shall not constitute a material change in this Agreement, unless such award has the effect of increasing the total amount Taco Bell must pay in complete settlement of all claims addressed by this Agreement.

(b)    **Identification of the Settlement Collective**.  Within ten (10) days after the Court enters the Approval Order, Taco Bell and Plaintiffs' Counsel shall provide the Settlement Administrator with the following information for the Settlement Collective:  (a) name; (b) last known address and telephone number; (c) Social Security number; (d) the date the Opt-in first worked as an exempt AGM or the date that is three years prior to the date on which the Opt-In filed his or her consent to join with the Court, whichever is later; and (e) the date the Opt-In last worked as an AGM or September 1, 2013, whichever is later.  The Parties agree that this information is confidential and shall not be shared with third parties other than the Settlement Administrator, who shall also agree to keep this information confidential.

(c)    **Notice to Settlement Collective**.  Within twenty (20) days of the Effective Date, the Settlement Administrator shall mail by first-class mail the Court-approved Settlement Notice, in the form of Exhibit B hereto, to the Settlement Collective. Each Settlement Notice will show the minimum,

estimated Individual Settlement Amount available to that Opt-In. If a Settlement Notice is returned as undeliverable, the Settlement Administrator shall take reasonable steps to obtain the correct address of any Opt-In for whom the Settlement Notice is returned, and shall attempt re-mailings as described in this Agreement. The Settlement Administrator will notify the Parties' counsel of any Settlement Notice that is returned as undeliverable after the first mailing, as well as any such Settlement Notices returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

(d)     **Final Settlement Collective & Request for Exclusion Deadline**. Plaintiff and Opt-ins are members of the Final Settlement Collective by operation of this Agreement and the filing of written consents to join the Action, and are not required to submit a claim form or further documentation in order to receive an Individual Settlement Amount.  A member of the Settlement Collective may exclude him or herself from the Settlement by submitting a "Request for Exclusion" in writing to the Settlement Administrator, with a postmark date of no later than thirty (30) days from the date on which the Notice is mailed.  A Request for Exclusion must include the Opt-In's name and address, and must state: (1) that the member is requesting to be excluded from the Parties' Settlement in the case entitled, Jaquelyn Ann Whittington, Individually and on Behalf of All Other Persons Similarly Situated v. Yum! Brands, Inc., Taco Bell of America, Inc., and Taco Bell Corp, Civil Action No. 1:10-cv-01884-KMT-MEH; and (2) that the member understands that by excluding him or herself from the Settlement, he or she will receive no funds in conjunction with the settlement of this Action.

(e)     **Identification of Final Settlement Collective Action Members.** Within ten (10) days after the Request for Exclusion Deadline, the Settlement Administrator shall certify jointly to Plaintiffs' Counsel and Defendants' counsel a list of all Final Settlement Collective Action Members, indicating for each Final Settlement Collective Action Member the Settlement Payment due to that individual pursuant to the Settlement Agreement, calculated pursuant to Section 4(f), below.

(f)     **Calculation of Individual Settlement Amounts**.  A Final Settlement Collective Action Member's Individual Settlement Amount shall be determined by the Settlement Administrator pursuant to the following formula:

(1)     Each Opt-In shall be assigned one point for each week worked at Taco Bell as an Assistant General Manager between the date three years before the date on which they opted-in to the Action and the date September 1, 2013.

9

(2)    To calculate each Opt-In's Individual Settlement Amount:

    (i)    Add all points for Opt-Ins together to obtain the "Total Denominator."

    (ii)    Divide the number of points for each Opt-In by the Total Denominator to obtain each Opt-In's "Portion of the Net Settlement Amount."

    (iii)    Multiply each Opt-In's Portion of the Net Settlement Amount by the Net Settlement Amount to determine each Opt-In's Individual Settlement Amount.

(g)    **Distribution of Settlement Checks**.  Within thirty (30) days after the Settlement Administrator has certified the identification of the Final Settlement Collective Action Members, the Settlement Administrator shall mail the Settlement Checks to the Final Settlement Collective Action Members at the addresses provided by Plaintiffs' Counsel and Defendants, or their last known address.

(h)    **Reminder Mailings.** Sixty (60) days after mailing the Settlement Checks, the Settlement Administrator will mail, by first-class U.S. mail, buck slip reminders to the Final Settlement Collective Action Members who have not cashed their Settlement Check, which shall remind the Final Settlement Collective Action Members to cash their Settlement Checks.  If a reminder mailing is returned as undeliverable, the Settlement Administrator shall take reasonable steps to obtain the correct address of any Opt-In for whom the reminder mailing is returned, and shall attempt re-mailings. The Settlement Administrator will notify the Parties' counsel of any reminder mailing that is returned as undeliverable after the first mailing, as well as any such reminder mailings returned as undeliverable after any subsequent mailing(s).

(i)    **Allocation of Settlement Checks**.  The Parties agree that each Settlement Check to be issued to each Final Settlement Collective Action Member shall be separated into two equal amounts:  fifty percent (50%) shall be allocated to the claims asserted in the Action for unpaid overtime and other wage-related damages, and fifty percent (50%) shall be allocated to the claims asserted in the Action for liquidated damages and other relief.  The portion allocated to claims for unpaid overtime and other wage-related damages shall be subject to all required employee paid payroll taxes and deductions and other required deductions.  The portion allocated to liquidated damages and other relief shall be characterized as non-wage income to the recipient.  The Settlement Administrator will report the wage portion to each Final Settlement Collective Action Member

on an IRS Form W-2 and the non-wage portion on an IRS Form 1099. Other than as set forth above, Taco Bell will not, unless otherwise required by law, make any deductions, withholdings, or additional payments, including, without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, contributions to qualified or non-qualified employee benefit plans, or charity withholdings, and entry of the Approval Order by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments.  Any amount paid to a Final Settlement Collective Action Member shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, or other compensation plan provided by Taco Bell.

(j)     **Taxation of Settlement Checks**.  Other than the withholding and reporting requirements set forth in Section 4(f), the Final Settlement Collective Action Members shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income or other tax or other withholdings, if any, on the payments made pursuant to this Section. Within ten (10) days after the Court approves this Settlement, the Settlement Administrator shall inform the Parties of an estimate of the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 4(f). The Settlement Administrator shall pay on Taco Bell's behalf that amount within ten (10) days from the date the Settlement Administrator so informs the Parties. Taco Bell makes no representations and it is understood and agreed that Taco Bell has made no representations as to the taxability of any portions of the Individual Settlement Checks made to any Final Settlement Collective Action Member, the payment of any costs or an award of attorneys' fees, or the Named Plaintiff Service Payment.  The Settlement Collective and Plaintiffs' Counsel agree that the allocation of the payments, including for the payment of attorneys' fees, are solely matters between the Settlement Collective and Plaintiffs' Counsel, and Taco Bell has no responsibility or liability related thereto.

(k)     **Negotiation of Settlement Checks**.  Each Final Settlement Collective Action Member will have one hundred and eighty (180) days from the date on which the Settlement Checks are mailed to cash his or her Settlement Check, which they will be informed of in the Settlement Notice and on the Settlement Checks. If any Settlement Check is not cashed in that period of time, that Settlement Check will be voided, and a stop-payment will be placed on the check.  Any Individual Settlement Check or portions thereof which remain unclaimed for any reason one hundred and eighty (180) days following the mailing of the Settlement Checks shall be deemed unclaimed ("Unclaimed Funds"). Neither Defendants, counsel for the

11

Parties, or the Settlement Administrator shall have any liability for lost or stolen Settlement Checks, for forged signatures on Settlement Checks, or for unauthorized negotiation of Settlement Checks. Without limiting the foregoing, in the event a Final Settlement Collective Action Member notifies the Settlement Administrator that he or she believes that a Settlement Check has been lost or stolen, the Settlement Administrator shall immediately notify the financial institution for the Account so that the financial institution may stop payment on such check. If the Settlement Check in question has not been negotiated prior to the stop payment order, the Settlement Administrator will issue a replacement check. The Final Settlement Collective Action Member will have an additional forty-five (45) days from the date of re-mailing to negotiate the re-issued check.

(l)   **Return of Unclaimed Funds to Defendants.** Twenty (20) days after the period for negotiating the Settlement Checks has ended, the Settlement Administrator shall return to Defendants any Unclaimed Funds it holds in the Account pertaining to the Parties' Settlement or this Agreement.

(m)   **Reserve Fund**: The Parties agree that the Settlement Administrator shall set aside Fifty Thousand Dollars ($50,000.00) in the Account to cover any correctable errors or omissions, satisfy any claims for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d), and pay any Settlement Checks negotiated within one year following the Effective Date ("Reserve Fund"). Any part of the Reserve Fund remaining after payment of any late negotiated Settlement Checks and correctable errors or omissions, will be returned to the Defendants.

5.   **Funding of Settlement Account**

The Total Settlement Amount shall be held as a separate non-interest bearing trust constituting a Qualified Settlement Fund (referred to herein as the "Account") as described in Treasury Regulation §1.468B-1, 26 C.F.R. §1.468B-1. Plaintiffs' Counsel and Taco Bell jointly shall, and shall cause the Trustee to, take such steps as shall be necessary to qualify the Account under §468B of the Internal Revenue Code, 26 U.S.C. §468B, and the regulations promulgated pursuant thereto.  The timing of the payment to the Account shall be as follows

(a)   Within ten (10) days of the Effective Date, Defendants shall transfer to the Account the Total Settlement Amount.

(b)   Following its deposit as described above, Defendants shall have no responsibility, financial obligation or liability whatsoever with respect to the notifications to the Settlement Collective required hereunder, the allowance or disallowance of claims by Settlement Collective, payments to Plaintiffs' Counsel, investment of Account funds, payment of federal, state,

and local income, employment, unemployment, excise, and other taxes imposed on the Account or its disbursements, payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the Account, since it is agreed that such deposits shall fully discharge Taco Bell's obligation to Final Settlement Collective Action Members, Plaintiffs' Counsel and expenses of administration in respect to the disposition of the Total Settlement Amount, hereunder.

(c) The principal in the Account (the amount deposited less any notice and administration costs that have been incurred) shall be returned to Defendants within seven (7) business days of any of the following events: (i) the Court determines not to enter an Approval Order; (ii) an Approval Order entered by the Court is set aside by an appellate court, unless otherwise agreed in writing by the Parties; or (iii) one of the Parties elects to terminate the Settlement Agreement pursuant to Section 7.

(d) Notwithstanding the preceding Section, all funds specified in this Section 5 shall remain in the Account pending the disposition of any appeal of the Approval Order.

## 6. Final Settlement Collective Action Members' Releases

(a) Upon the Effective Date, each Final Settlement Collective Action Member shall be deemed to fully, forever, irrevocably and unconditionally release, acquit, remise, and forever discharge each of the Released Parties from the Released Claims as defined herein.

(b) Released Claims means any and all past, present, and future suits, actions, causes of action, claims, damages, awards, legal, equitable, and administrative relief, interest, rights, or demands that are based upon, related to, or connected with, directly or indirectly, in whole or in part, the allegations, facts, subjects, issues or events that occurred or that are alleged to have occurred that have been asserted in the Action, including but not limited to claims, rights, and causes of action, whether known or unknown, pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*, and/or any federal, state or other law regulating hours of work, wages, the payment of wages, and/or the payment of overtime compensation based on any act or omission that occurred up to and including the date on which the Court enters an Approval Order; including without limitation statutory, constitutional, contractual, and common law claims for wages, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage and hour claim (including claims for overtime wages or any other wages), any and all claims pursuant to or derived from the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, that arise from any alleged failure to pay wages, including any claims

13

for benefits under any benefit plans subject to ERISA that arise from any such alleged failure; and any claims under other federal, state, or other law relating to Defendants' alleged failure to pay wages to the Settlement Collective up to and including the date the Court enters an Approval Order.

(c)     Final Settlement Collective Action Members are, without limitation, precluded and estopped from bringing in the future any claim or cause of action released in the preceding paragraph.

(d)     Final Settlement Collective Action Members acknowledge that they are releasing claims that are known and unknown, suspected and unsuspected, and discovered and undiscovered, and are aware that they may hereafter discover legal or equitable claims or remedies presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, including those with respect to the allegations and subject matters in the Action.  Nevertheless, it is the intention of the Final Settlement Collection Action Members to fully, finally, and forever settle and release all such matters, and all claims and causes of action relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted by Plaintiffs in the Action).

(e)     Final Settlement Collection Action Members understand, acknowledge, and agree that this release is a full and final release applying to both those Released Claims that are currently known, anticipated, or disclosed to any and all Final Settlement Collection Action Members and to all those Released Claims that are presently unknown, unanticipated, or undisclosed to any and all Final Settlement Collection Action Members arising out of the alleged facts, circumstances, and occurrences underlying: (i) the claims set forth in the Action; or (ii) the Released Parties' conduct with respect to the Action.  In exchange for good and valuable consideration set forth herein, the Final Settlement Collection Action Members waive as a result of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Action under the terms of Section 1542 of the California Civil Code (or similar statute in effect in any other jurisdiction), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH DEBTOR.

(f)    This Release may be raised as a complete defense to and will preclude and bar any action or proceeding that is encompassed by this Release.

(g)    The provisions of this Release constitute an essential and material term of this Settlement Agreement to be included in the Approval Order entered by the Court.

**7.**    **Termination of Settlement Agreement**

(a)    **Grounds for Settlement Termination**.  Any Party may terminate this Settlement Agreement if the Court declines to approve this Settlement Agreement, the Court's entry of the Approval Order is reversed or substantially modified on appeal, or the settlement as agreed does not become final for any other reason, provided the Parties agree to work cooperatively and in good faith for a period of fourteen (14) days to address and resolve any concerns identified by the Court or a court of appeal in declining to approve this Settlement Agreement in the form submitted by the Parties.

(b)    **Defendants' Option to Terminate.**   In addition, if greater than ten percent (10%) of all members of the Settlement Collective, in the aggregate, file Requests for Exclusion seeking to be excluded from the Parties' settlement, this Settlement Agreement shall be voidable at Defendants' option.  In the event that Defendant opts to terminate the Settlement Agreement, the principal in the Account (the amount deposited less any notice and administration costs that have been incurred) shall be returned to Defendants within seven (7) days.

(c)    **Procedure for Settlement Termination**.  To terminate this Settlement Agreement as specified above, the terminating Party shall give written notice to the other Party no later than ten (10) days after the terminating Party learns that the applicable ground for termination has been satisfied.

(d)    **Effect of Settlement Termination**.  In the event that this Settlement Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Action is barred by operation of laws, is invalidated, is not approved, or otherwise is ordered not to be carried out by any court: (1) the Settlement Agreement shall have no force or effect, and no Party shall be bound by any of its terms; (2) Defendants shall have no obligation to make any payments to any Party, Opt-In, Named Plaintiff, Final Settlement Collective Action Member, or attorney; (3) any Approval Order and judgment shall be vacated; (4) neither this Settlement Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement shall be admissible or offered into evidence in the Action or any other action for any purpose

15

whatsoever; (5) the Parties agree to cooperate in asking the Court to set a reasonable schedule for the resumption of the Action; and (6) the Parties reserve all rights, claims, defenses, and appeals that they may have, including but not limited to their rights, claims, defenses, and appeals with respect to whether the Action should proceed as a collective action and the membership of the collective action.

8.    **Media Statements**

(a)    The Parties and their respective counsel agree that they (1) will make no public statements with respect to the Settlement other than to state "the matter has been resolved" in the event any inquiry is made as to the status of the matter and (2) will not seek out or encourage media or press attention.  In the event that one of the Parties believe a statement has been made that violates the provisions of this section, Plaintiffs' Counsel and Defendants' Counsel shall meet and confer informally in an effort to resolve the dispute.  If the dispute cannot be resolved informally, such dispute shall be submitted to the District Court for resolution.  The District Court may grant an injunction to cease and desist from than making statements that violate this section, as well as award to the prevailing party reasonable attorneys' fees and costs associated with the hearing of the dispute.  The Parties waive any right to appeal or otherwise seek review of the District Court's decision.

(b)    Notwithstanding the foregoing, nothing shall prevent Plaintiffs' Counsel from communicating with the Named Plaintiff, Opt-Ins and the Settlement Collective about the settlement or the Agreement, and nothing herein shall prevent Defendants from communicating with their employees on any subject.

9.    **Documents and Discovery**

Within sixty (60) days after the Effective Date, Plaintiffs' Counsel shall take steps necessary to destroy or erase all documents and data produced by Taco Bell to Plaintiffs' Counsel in connection with this Action and which are currently in Plaintiffs' Counsel's possession, custody, or control.  Plaintiffs' Counsel shall certify to Taco Bell, in writing, their good faith efforts to comply with their obligations under this provision.  Plaintiffs' Counsel may treat this process of destruction/erasure as a case cost.  Further, Plaintiffs' Counsel may and will keep their own work product, filed briefs, and pleadings that may refer to, quote, or incorporate documents and data, as well as any material required by applicable statute and attorney disciplinary and ethical rules.

10.   **Additional Provisions**

(a)   **Entire Agreement**.  This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith.  Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore.

(b)   **This Agreement Governs**.  To the extent there is any inconsistency between this Settlement Agreement and any Notice, this Settlement Agreement shall govern and operate to define the rights and obligations of the Parties.

(c)   **Commitment to Support and Further Assurances**.  Plaintiff, Defendants, and their respective counsel, agree to recommend approval of and support this Settlement Agreement to the Court and to undertake their best efforts, including all reasonable steps and efforts contemplated by this Settlement Agreement and any other reasonable steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement.  In connection with this Section, each Party shall take any and all actions, and execute, have acknowledged, and deliver any and all further documents that one or more other Parties may reasonably request to effectuate the intent and purpose of this Settlement Agreement.

(d)   **Modifications**.  This Settlement Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

(e)   **Knowing and Voluntary Agreement**.  The Parties each agree that they are entering into the Settlement Agreement knowingly, voluntarily, and with full knowledge of its significance. The Parties further affirm that they have not been coerced, threatened, or intimidated into signing the Settlement Agreement; that they have been advised to consult with an attorney; and that they have in fact consulted with an attorney before signing the Settlement Agreement. Plaintiffs' Counsel represent that they have conducted a thorough investigation into the facts of the Action and have diligently pursued an investigation of the claims asserted on behalf of the Settlement Collective Action Members against Taco Bell.

(f)   **Severability**.  If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect

17

the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to effect the purposes thereof to the fullest extent permitted by law.  If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.

(g)     **Binding Effect on Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors, and assigns.

(h)     **Counterparts**.  This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signer counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties.

(i)     **Headings**.  The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

(j)     **Authority of Persons Signing Agreement**.  The individuals executing this Settlement Agreement for the Parties represent and warrant that they do so with full authority to bind each such party to the terms and provisions in this Settlement Agreement.

(k)     **No Presumption Against Drafter**.  None of the Parties shall be considered to be the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

(l)     **Extensions of Time**.  The Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Settlement Agreement, subject, if necessary, to approval by the Court.

(m)     **Notices**.  Any notices issued pursuant to the terms of this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

18

For Plaintiffs to:

Seth R. Lesser, Esq.
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Phone:  914-934-9200
Fax:  914-934-9220
seth@klafterolsen.com

For Defendants to:

Brian L. Duffy, Esq.
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO  80202
Phone:  303-572-6500
Fax:  303-572-6540
DuffyB@gtlaw.com

(n)   **Governing Law**.  This Agreement shall be governed by Colorado law, without regard to that state's choice of law provisions or any other jurisdiction, and, when applicable, the laws of the United States, irrespective of where any action may arise or whether any jurisdiction other than Colorado has accepted jurisdiction of this matter.  The Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of the terms of this Agreement.

(o)   **Court's Continuing Jurisdiction**.  Without altering the finality of any of the Court's orders and judgments, the Court shall retain exclusive jurisdiction over Plaintiffs, Defendants, Final Settlement Collective Action Members, and the Action with respect to matters arising out of or connected with the Settlement, and may issue such orders as necessary to implement the terms of the Settlement.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** the Parties and Plaintiffs' Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

PLAINTIFFS' COUNSEL

Seth R. Lesser, Esq.
Klafter Olsen & Lesser LLP
Dated: August /2, 2013

PLAINTIFF, on behalf of herself and others similarly situated,

Jacquelyn Ann Whittington
Dated: August __, 2013

TACO BELL CORP.

By: _____
Title: _____
Dated: August__, 2013

TACO BELL OF AMERICA, INC.

By: _____
Title: _____
Dated: August __, 2013

20

**IN WITNESS WHEREOF,** the Parties and Plaintiffs' Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

PLAINTIFFS' COUNSEL

_____
Seth R. Lesser, Esq.
Klafter Olsen & Lesser LLP
Dated: August __, 2013

PLAINTIFF, on behalf of herself and others similarly situated,

_____
Jacquelyn Ann Whittington
Dated: August __, 2013

TACO BELL CORP.

By: _Melissa Lore_____
Title: _____
Dated: August 12, 2013

TACO BELL OF AMERICA, INC.

By: _Melissa Lore_____
Title: _____
Dated: August 12, 2013

# EXHIBIT A

to

COLLECTIVE ACTION SETTLEMENT AGREEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-01884-KMT-MEH

JACQUELYN ANN WHITTINGTON,
Individually and on Behalf of All
Other Persons Similarly Situated,

     Plaintiffs,

v.

TACO BELL OF AMERICA, INC.; and
TACO BELL CORP.,

     Defendants.

---

## [PROPOSED] ORDER APPROVING SETTLEMENT

---

Upon consideration of the Parties' Collective Action Settlement Agreement, and it appearing to the Court that in recognition of the uncertainty, expense, difficulties, and delays inherent in complex collective action litigation, the Parties have determined to settle their differences for the benefit of all concerned as set forth in the Collective Action Settlement Agreement (the original of which is filed of record under seal), and that the Settlement reflects an adequate, fair, and reasonable resolution of a bona fide dispute pursuant to 29 U.S.C. § 216(b), it is hereby ORDERED as follows:

1.    The Settlement is APPROVED as a fair and reasonable resolution of a bona fide dispute, and in the public interest, and the terms of the Settlement Agreement are hereby determined to be fair, reasonable and adequate, for the exclusive benefit of the Settlement Collective.

2.    Plaintiff Jacquelyn Ann Whittington is appointed Representative Plaintiff who, together with Plaintiffs' Counsel (as defined in the Collective Action Settlement Agreement), shall be authorized to act on behalf of all Plaintiffs, Opt-in Plaintiffs, and Final Settlement Collective Action Members with respect to the Settlement.

3.    The Court APPROVES payment of the Total Settlement Amount in the amount of Two Million Four Hundred Ninety Thousand Dollars ($2,490,000.00), in accordance with the terms of the Settlement Agreement.

4.    The Court APPROVES a Named Plaintiff Service Payment to Jacquelyn Ann Whittington in the amount of Seven Thousand Five Hundred Dollars ($7,500.00).

5.      The Court APPROVES payment of Attorneys' Fees and Costs in the amounts of $821,700.00 in fees, and in the amount of $153,496.85 for costs, to Plaintiffs' Counsel.

6.      The Settlement Notice is APPROVED and shall be mailed to the Settlement Collective (as defined in the Collective Action Settlement Agreement).

7.      The Garden City Group is appointed as Settlement Administrator, and is responsible for administering the terms of the Collective Action Settlement Agreement, including sending the Settlement Notice to the Settlement Collective, paying the members of the Final Settlement Collective, and handling all other work incidental to administering the Settlement.

9.      Plaintiff and Opt-Ins are members of the Final Settlement Collective by operation of the Agreement and the filing of written consents to join the Action, and are not required to submit a claim form or further documentation in order to participation in the Settlement.  As provided by the Collective Action Settlement, an Opt-In may exclude him or herself from the Settlement by submitting a "Request for Exclusion" in writing to the Settlement Administrator within thirty days from the date on which the Settlement Notice is mailed.

10.      The Action is DISMISSED WITH PREJUDICE with respect to all Final Settlement Collective Action Members and WITHOUT PREJUDICE with respect to any Opt-Ins who submit a timely Request for Exclusion, without costs to any Party, other than as specified in the Settlement Agreement and this Order.  The Parties will submit to the Court within sixty days of the Effective Date a list comprising the Final Settlement Collective Action Members as well as the names of any individuals who submitted a timely Request for Exclusion, which list will be appended to this Order.

11.      In consideration of the Total Settlement Amount, and for other good and valuable consideration, each of the Final Settlement Collective Action Members shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all Released Claims against Defendants in accordance with Section 6 of the Settlement Agreement, shall have covenanted not to sue Defendants with respect to all such Released Claims, and shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any such Released Claims against Defendants.

12.      This Judgment is the Final Judgment in the suit as to all Released Claims of the Final Settlement Collective Action Members.

13.      Without affecting the finality of this Judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement and the terms of the Settlement Agreement; (b) distribution of the Total Settlement Amount, the Named Plaintiff Service Payment, and the Attorneys' Fees and Costs; and (c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Settlement Agreement and/or the Settlement, and the administration of

Claims by Final Settlement Collective Action Members.  The time to appeal from this Judgment shall commence upon its entry.

14.     In the event that the Settlement Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated, *nunc pro tunc*, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the status quo ante rights of Plaintiffs, Opt-Ins, and Defendants.

15.     This Court finds that there is no just reason for delay and expressly directs Judgment and immediate entry by the Clerk of the Court.


DATED: _____

_____

United States Magistrate Judge

# EXHIBIT B

to

COLLECTIVE ACTION SETTLEMENT AGREEMENT

WHITTINGTON, ET AL., V.
YUM! BRANDS, INC., TACO BELL OF AMERICA, INC., AND TACO BELL CORP,
CIVIL ACTION NO. 1:10-CV-01884-KMT-MEH
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

# NOTICE OF SETTLEMENT

To:      [_____NAME_____]

**The Court has approved a settlement in this case.  If the settlement becomes final and you
do nothing you will be mailed a check for approximately $_____ in about 70 days.
You can, if you wish, opt-out of the settlement, but, if you do so, you will have to
commence a new action and represent yourself in that case or obtain new lawyers to
reassert the claims that were being litigated in this case.  Your options are:**

1.  **Do nothing and in about 70 days you will be sent a check for $_____, which
    will be <u>after</u> tax withholdings,**

                                   **OR**

2.  **Request to exclude yourself in writing, with your request due <u>no later than [30
    days after mailing]</u>.  This preserves your claims asserted in the case but, should
    you wish to assert them, as of [30 days from mailing], the statute of limitations
    on them will start running again, and to assert the claims, you will need to
    commence your own action against Taco Bell.**

**Here is the summary of information about the settlement. You have other rights under the
settlement and a Full Notice follows this summary.**

## What is The Action About and Why Was This Notice Sent?

You previously joined this lawsuit by having a Consent to Join filed on your behalf.  The lawsuit
asserts that Taco Bell of America, Inc. and Taco Bell Corp. (referred to herein as "Taco Bell")
misclassified you and other Assistant General Managers as non-exempt employees and, as a
result, did not pay you and other Assistant General Managers overtime pay for hours worked in
excess of 40 hours per week.

## Who is Affected by The Settlement?

You are receiving this notice because you previously joined this lawsuit by having a Consent to
Join filed on your behalf, which means you are eligible to participate in and receive money from
the settlement.  Anyone who did not join the lawsuit is not eligible to participate.

## How Much Can You Expect to Receive and How Can You Participate in the Settlement?

The total amount of the settlement is $2,490,000.00.  Each of the 476 present or former Assistant
General Managers who joined the lawsuit is treated equally and gets an equal share of the net
settlement amount available based upon the total number of weeks that he or she worked during

the applicable period of time (which was three years prior to the time that your Consent to Join the case was filed with the Court). The net amount of the settlement is the total settlement amount less attorneys' fees and costs, a proposed service payment to the Named Plaintiff, Ms. Whittington, who started the case on behalf of herself and others like you, and the costs of administering the settlement (such as sending this notice and sending you a check). These requested costs have been approved by the Court. **Your individual share would be about $_____.** This will be after federal and state tax withholdings.

**You do not need to submit a claim form or other documentation to receive money.** A check will be sent to you within about 70 days after the date of this notice if you do nothing. If you do not receive a check, you must contact the Claims Administrator at _____ or _____ to make sure you do receive a check. At some point, all checks will become stale and cannot be reissued and you will lose your chance to obtain the money under the settlement. *See further details on pages 3-5 of the Full Notice.*

| No Retaliation |
| --- |

**Taco Bell will not take any action against employees who joined the Action or participate in the Settlement.** *See further details on page 5 of the Full Notice.*

| What if You Have Questions? |
| --- |

The attached Notice only summarizes this Action, the Settlement, and related matters. For more information about the Settlement or if you have any questions regarding the Settlement, you may examine the Court file for the Action, contact the Settlement Administrator, the Garden City Group at:

[GCG Information]

or you may contact the lead attorneys who were representing you and the others individuals who joined the case, attorneys at Klafter Olsen & Lesser LLP and Kellogg Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC. Their information as at page 4 of the Full Notice.

# THE FULL NOTICE WITH FURTHER DETAILS IMMEDIATELY FOLLOWS THIS SUMMARY

WHITTINGTON, ET AL., V.
YUM! BRANDS, INC., TACO BELL OF AMERICA, INC., AND TACO BELL CORP,
CIVIL ACTION NO. 1:10-CV-01884-KMT-MEH
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

## NOTICE OF SETTLEMENT OF COLLECTIVE ACTION

**To:** **[NAME]**

**Re:** **Settlement of Collective Action**

**Date:** **[DATE]**

## INTRODUCTION

- The parties have reached an agreement to settle this collective action lawsuit.  Please read this Notice carefully.  It contains important information about your rights concerning the collective action Settlement described below.

- As described more fully below, you do not need to do anything in order to participate in the Settlement.  All individuals who have filed a written Consent to Join the Action will be sent a check.  Settlement checks will be sent about 70 days after the date of the mailing of this notice.  The check will be sent to the address to which this Notice was sent.  If you want it sent to a different address, contact the Garden City Group at _____ or _____.

- The law prohibits retaliation against current or former employees who participate in settlements.  Taco Bell will not retaliate against any settlement members who participate.

This Notice explains the collective action lawsuit and the terms of the Settlement and explains your rights and obligations.  The Notice is not intended to be and should not be understood as an expression of any opinion by the Court as to the merits of any of the claims or defenses asserted in the case.  The Notice contains information about the following topics:

1. What is the Action About and Why Was This Notice Sent?
2. Who is Affected by the Settlement?
3. What are your Options?
4. What Are The Terms of The Settlement and How Much Can You Expect to Receive?
5. Who Represents The Parties and How Will Attorneys for The Collective Get Paid?
6. How Can You Participate in the Settlement?
7. What If You Do Nothing?
8. No Retaliation
9. How Can You Exclude Yourself or "Opt-Out" of the Settlement?
10. What if You Have Questions?

**1.  What is The Action About and Why Was This Notice Sent?**

A former Assistant General Manager of Taco Bell filed a lawsuit against Taco Bell, alleging that certain Assistant General Managers should have been but were not paid proper overtime wages for weeks in which they worked more than 40 hours ("Action").  The Action alleges that Taco Bell misclassified Assistant General Managers as "exempt" from federal and state overtime pay requirements.  The Action further alleges that, because Assistant General Managers should have been treated as non-exempt hourly employees, Assistant General Managers should have received additional wages for overtime.

Taco Bell denies the Action's allegations, asserts that it has at all relevant times properly classified its Assistant General Managers, and asserts that its pay practices, with respect to all Assistant General Managers, have complied with all legal requirements.

The Action is pending before The Honorable Magistrate Judge Kathleen M. Tafoya in the United States District Court for the District of Colorado.  On January 10, 2012, Judge Tafoya conditionally certified a collective action of all persons who are or were formerly employed as Assistant General Managers at a company-owned Taco Bell restaurant(s) in any state other than California at any time since January 10, 2009.  After litigating the case for over two years and engaging in discovery and extensive negotiations, the parties have reached a Settlement of all claims.  The Court has granted approval of the Settlement.  This Notice tells you about your rights and responsibilities under the Settlement.

**2.  Who is Affected by The Proposed Settlement?**

The Settlement would cover anyone who is or was formerly employed as Assistant General Managers at company-owned Taco Bell restaurants in any state other than California at any time since January 10, 2009, and who joined the conditional collective action certified by the Court in January 2012 (these individuals are referred to in this Notice as the "Settlement Collective Action Members").  If you did not join this lawsuit by having a Consent to Join filed on your behalf but otherwise received this Notice, you are not eligible to participate.

The parties agreed for purposes of settlement only not to challenge, disturb or otherwise seek modification of the collective action, as it was conditionally certified by the Court.  Accordingly, all members of the action are now Settlement Collective Action Members.

**3.  What Are Your Options?**

You have two options with regards to this Settlement.  You can:

> (1)    Do nothing and participate in the Settlement; or
> (2)    Request to be excluded from the Settlement.

Details about how each option would affect your rights are explained below.

| **4.   What Are The Terms of The Settlement and How Much Can You Expect to Receive?** |
|---|

After a thorough analysis of all claims and defenses, and after extensive negotiations, the Named Plaintiff and Plaintiffs' Counsel, on behalf of the settlement collective, and Taco Bell have agreed to settle the collective action claims against Taco Bell on the terms described below.  On [DATE], the Court granted approval to the Settlement.

The basic terms of the Settlement Agreement are as follows:  Taco Bell will pay $2,490,000.00 ("Total Settlement Amount") into a fund.  This fund will pay Plaintiffs' Counsel's fees and litigation costs, the cost of settlement administration, a proposed service payment to the named plaintiff, the full amount of both the participating collective action members' W-2 tax withholdings (and state/local withholdings if applicable) and any employer share of payroll taxes on back wage payments made to participating claimants.

After these deductions, the remaining amount available will be distributed to the Settlement Collective Action Members.  Each Settlement Collective Action Member will receive an amount that will be determined by the number of weeks that he or she worked as a salaried Assistant General Manager as compared with other eligible Settlement Collective Action Members during the relevant time periods.  The calculation for the payments due to the Settlement Collective is as follows:

Each member will be assigned one point for each week worked at Taco Bell as an Assistant General Manager during the collective period based on records maintained by Taco Bell.

To calculate each member's individual payment, the Settlement Administrator will use the following formula:

- Add all points for the Settlement Collective together to obtain the denominator;
- Divide the number of points for each member by the total denominator to obtain each member's portion of the net settlement amount;
- Multiply each member's portion of the net settlement amount by the Net Settlement Amount to determine his or her individual payment.

**Based on records maintained by Taco Bell, the anticipated amount you may receive if the Settlement becomes final is: [INSERT].  This figure is based on the following information:**

- Your Consent to Join the Action was filed on: [DATE].
- Your claim period begins three years prior on: [DATE].
- The number of weeks that you worked as an exempt Assistant General Manager at Taco Bell during the claim period is: [NUMBER].

If you believe that Taco Bell's records concerning the number of weeks you worked may be incorrect, you must immediately contact the Settlement Administrator to indicate your disagreement, but if you do so, you must also provide pay-stubs or other documentation

3

supporting your claim.  Otherwise, the check that will be sent to you in about 70 days will use the above weeks-worked number.

## 5.  Who Represents the Parties and How Will The Attorneys for the Collective Get Paid?

Attorneys for the Named Plaintiff & the Settlement Collective Action Members:

**Klafter Olsen & Lesser LLP**
Seth R. Lesser, Esq.
Fran L. Rudich, Esq.
Two International Drive, Suite 350
Rye Brook, NY 10573
Ph:  914.934.9200
Fax:  914.934.9220
www.klafterolsen.com

**Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC**
Silvija Strikis, Esq.
1615 M. Street, N.W., Suite 400
Washington, D.C. 20036
Ph:  202.326.7900
Fax:  202.326.7999
www.khhte.com

Steven M. Feder of the Feder Law Firm, Equitable Building, 730 17th Street, Suite 550, Denver, CO 80202-3539, (303) 261-8798, is local counsel.  The Named Plaintiff is Jacquelyn Ann Whittington, a former Assistant General Manager of Taco Bell.

Plaintiffs' Counsel has applied to the Court for legal fees of no more than thirty-three and one-third percent (33 1/3%) of the total Settlement amount, or $821,700.00, and for their costs, which have been $153,496.85.  The requested fees are substantially less than the time that Plaintiffs' Counsel has billed in the litigation, which is almost $2,000,000.

Plaintiffs' Counsel will also request a Named Plaintiff service award of no more than $7,500 for Ms. Whittington.  From the Total Settlement Amount will also be deducted the costs of notice and administration of the Settlement.  The actual amounts awarded will be determined by the Court to ensure that the amount of attorneys' fees, costs, and service awards are reasonable.

Attorneys for Taco Bell are:

**GREENBERG TRAURIG LLP**
Brian L. Duffy, Esq.
1200 17th Street, Suite 2400
Denver, CO 80202
Ph:  303.572.6500
Fax:  303.572.6540

## 6. How Can You Participate in the Settlement?

All individuals who joined this lawsuit by having a Consent to Join filed on their behalf will receive his or her share of the Settlement Fund by check.  You do not need to submit a claim form or other documentation to receive a monetary award.  **If you do not receive a check within 80 days after the date of this Notice, you should contact the Garden City Group, whose information is provided at page 6.**

## 7. What if You Do Nothing?

Because you already joined the lawsuit by having a Consent to Join filed on your behalf, you are a member of the Settlement Collective.  As a result, if you do nothing, you will still receive your share of the Settlement Fund once the Settlement becomes final (i.e., once any appeals are resolved).  You will also be deemed to have released and waived any wage and hour claims during the Relevant Period applicable to you under state or local laws that were alleged or that could have been alleged based on the facts set forth in the Action.

## 8. No Retaliation

**Your participation in the Settlement will in no way affect your employment with Taco Bell. Taco Bell is prohibited by law from taking any action against employees who join the Action or participate in the Settlement.**

## 9. How Can You Exclude Yourself or "Opt-Out" of The Settlement?

If you are a member of the Settlement Collective described above and you wish not to take part in the Settlement, you must exclude yourself from the Settlement by submitting a "Request for Exclusion" to the Settlement Administrator.  **That request must be received by the Settlement Administrator no later than [30 days after mailing].**  If you exclude yourself, you will not participate in these proceedings, nor will you receive any money from the net Settlement Fund, but you will retain the right to assert any claims you may have against Taco Bell relating to the payment of wages for hours of work.  However, as of [30 days from notice], the statute of limitations on your claim (which is a maximum of three years prior to date it was filed with the Court) will continue to run, and to assert your claims you would have to file an action yourself or have a lawyer file an action on your behalf.  The attorneys for the Settlement Collective **will not** be representing you after you file a "Request for Exclusion," and you will need to find another lawyer to represent you.

Your Request for Exclusion must include your name and address, and must state:  (1) that you are requesting to be excluded from the Parties' Settlement in the case entitled, *Jacquelyn Ann Whittington, Individually and on Behalf of All Other Persons Similarly Situated v. Yum! Brands, Inc., and Taco Bell of America, Inc., and Taco Bell Corp,* Civil Action No. 1:10-cv-01884-KMT-MEH; (2) that you understand that by excluding yourself from the Settlement, you will receive no funds in conjunction with the settlement of this Action; and (3) that you understand that the attorneys for the Settlement Collective will no longer be representing you.

**10. What if You Have Questions?**

This Notice only summarizes this Action, the Settlement, and related matters.  For more information about the Settlement or if you have any questions regarding the Settlement, you may examine the Court file for the Action, contact the Settlement Administrator or contact Plaintiffs' Counsel.

You can contact Plaintiffs' Counsel at the address or numbers listed at page 4, above.  You may also obtain additional information concerning the Settlement from www.[insert website from Settlement administrator] or by contacting the Settlement Administrator at:



[NAME]
[ADDRESS]
[phone number]

In order to see the complete court file, including a copy of the settlement agreement, you should visit the Clerk of the Court, United States Courthouse, District of Colorado, 901 19th Street, Denver, Colorado 80294-3589.  The Clerk will make all files relating to this Action available to you for inspection and copying at your expense.

### ***Do not contact the Court about this matter***.

Dated: _____, 2013

# EXHIBIT C

to

COLLECTIVE ACTION SETTLEMENT AGREEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 1:10-cv-01884-KMT-MEH

JACQUELYN ANN WHITTINGTON,
Individually and on behalf of all others similarly situated,

      Plaintiff,

v.

TACO BELL OF AMERICA, INC.; and
TACO BELL CORP.,

      Defendants.

---

## JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

---

Plaintiff Jacquelyn Ann Whittington on behalf of herself, and all Opt-Ins (collectively "Plaintiffs"), and Taco Bell of America, Inc. and Taco Bell Corp. (collectively, "Taco Bell" or "Defendants"), have professionally settled the claims of the conditionally-certified FLSA collective action as of August 12, 2013, as reflected in the Settlement Collective Action Agreement (the "Settlement Agreement") attached as Exhibit 1.[1]  The settlement occurred only after the parties: (i) litigated this action for the past three years; (ii) exchanged significant discovery of all aspects of the case and had also exchanged mediation-specific discovery, including payroll and other data regarding the Plaintiffs and Defendants and (iii) conducted mediation with an experienced mediator.  The settlement, which was the product of arms-length negotiations by experienced counsel, will provide monetary compensation to all Plaintiffs and eliminate the risks both sides

---

[1] Plaintiffs' counsel is acquiring the signature of the Named Plaintiff, which the Parties will file as a supplemental exhibit on or before August 14, 2013.

would bear if this litigation continued.  The parties believe the settlement, which is memorialized in a Collective Action Settlement Agreement ("Settlement Agreement"), is fair and reasonable and should be approved.

Court approval of this FLSA collective action settlement is necessary to effectuate a valid and enforceable release of Plaintiffs' Fair Labor Standards Act ("FLSA") claims.  Where, as here, the litigation arises from a private enforcement action under the FLSA (and 29 U.S.C. §216 (b) in particular), the standard for approval is straightforward: a district court may approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA.  *Lynn's Food Stores, Inc. v. United States.,* 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697 (1945)).  Because this settlement clearly meets the applicable judicial standard, the parties respectfully request this Court's approval of this FLSA settlement.  *See* pp. 5-7, below.

## I.   FACTS AND PROCEDURAL HISTORY

On August 6, 2010, Plaintiff Jacquelyn Whittington filed a Complaint on behalf of herself and other similarly situated employees, in which she asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., arising out of an alleged failure to appropriately compensate Assistant General Managers ("AGMs") for all hours worked per workweek (Dkt. No. 1).[2]  Shortly after Plaintiffs filed suit, the parties engaged in significant discovery addressing Plaintiffs' claims that she was "similarly situated" with other putative plaintiffs.   On September 16, 2011, Plaintiffs filed a motion for conditional certification under the FLSA, seeking conditional certification of a nationwide class of

---

[2] Plaintiff also brought a class claim pursuant to the Colorado Minimum Wage Order set forth at 7 CCR § 1103-1, which was not pursued in this litigation.

AGMs (Dkt. Nos. 61 & 62).  The Court granted Plaintiffs' motion on January 10, 2012,

conditionally certifying the following collective:

> All persons who are or were formerly employed as Assistant General Managers at a company-owned Taco Bell restaurant(s) in any state other than California at any time since January 10, 2009.

(Dkt. No. 85).  Following this conditional certification, all potential collective action

members had 90 days in which to join the collective action.  Ultimately, including several

late claimants who the parties agreed to let join the action, 475 individuals filed written

consents to join the action as opt-in Plaintiffs.

Plaintiffs have aggressively litigated their claims, which they believe are

meritorious – namely, that the primary work in which Plaintiffs spent their time was non-

managerial work of the type insufficient to comply with the exemption requirements set

forth in 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.100(a).  Defendants, in turn, strongly

dispute the validity of the claims asserted against them and offer multiple defenses,

including, but not limited to: (1) evidence submitted by members of the collective action

and other AGMs substantiate the full range of managerial and supervisory duties

performed by the AGM position; (2) Department of Labor and other opinions support

Defendants' classification of the AGM position as exempt; (3) evidence submitted by

AGMs and elicited from members of the collective action demonstrates the differences

in individual performance of the position such that decertification is appropriate; (4)

Defendants dispute Plaintiffs' computation of wages owed because they are not

premised on a fluctuating work week and their expert's computations suffer from other

formulaic deficiencies; and (5) Defendants cannot be liable for liquidated damages

because they at all times acted in good faith and did not willfully or knowingly violate

3

any provision of the FLSA.  Both sides to the settlement recognize that all of these points could be subjected to extended dispute and litigation.

On April 8, 2013, the parties mediated this matter with mediator Judge Edward Nottingham.  After a full day of mediation, the parties were unable to reach an agreement.  Counsel for the parties, however, remained engaged in negotiation efforts over the next several months.  After exchanging several settlement demands and offers, and after extended discussion of the claims, the parties arrived at an agreement to settle the claims in the lawsuit, which, as noted, involve numerous vigorously contested legal and factual issues.

## II.    SETTLEMENT TERMS

The Settlement Agreement provides that, for settlement purposes only, Defendants will agree not to challenge, disturb, or otherwise seek modification or decertification of the collective action conditionally certified by this Court's Order dated January 10, 2012, consisting of Plaintiff and 475 opt-in plaintiffs who have filed written consents to join the lawsuit (the "Settlement Collective").  (*See* Exhibit 1 at §§ 1, 3(a).) The terms of the Settlement Agreement provide generally for a fair and reasonable structure to the Settlement Collective and, if approved, their attorneys.

While maintaining its general denial of Plaintiffs' claims, Taco Bell agrees to pay a Total Settlement Sum of $2,490,000.00.  (*See id.* § 2.)  After subtracting the administrative costs associated with the Settlement, including attorneys' fees for the lawyers representing the Settlement Collective and a service payment to the Named Plaintiff, the remaining money in the Settlement fund will be allocated as set forth in Section 4(f) so that each member of the Settlement Collective will receive a share of the Settlement based on the number of weeks that he or she worked as a salaried AGM as

4

compared with other eligible class members during the class period.  (*Id*. § 4(f).)  Based on the calculations set forth in the Settlement Agreement, the average gross settlement amount allocated to each class member is approximately $5,000.  Payments in the form of a check will be mailed by the Settlement Administrator to each member of the Settlement Collective within four months of the Settlement Notice. (*Id*. § 4(g).)

In exchange, each member of the Settlement Collective has agreed to dismiss his or her FLSA claims, as well as any other wage claims that he or she may have against Defendants, for any occurrence predating the Effective Date.  (*Id*. § 6.)  The Parties jointly request that this Court approve the terms of the Settlement Agreement.

## III.   ARGUMENT AND AUTHORITIES

### A.   The Court May Approve the Proposed Collective Action Settlement.

Proposed settlements under the FLSA require court approval to effectuate a valid release.  *See Lynn's Food Stores,* 679 F.2d at 1353.  Specifically, wage claims under the FLSA must either be settled by the Secretary of Labor or be settled under a private enforcement action under 29 U.S.C. § 216(c) that is approved by a District Court.  *Id.* at 1353.  When the latter option is proposed, as it is here, the Court may enter a stipulated judgment, "after scrutinizing the settlement for fairness."  *Id.* (citing *Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946)); *Peterson v. Mortg. Sources, Corp.,* 08–2660–KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011).

The Court's inquiry about the fairness of an FLSA settlement arising from a private enforcement action is two-pronged.[3]  *First*, the Court should be satisfied that the settlement was the product of "contested litigation."  *Second*, the Court should inquire

---

[3] Inasmuch as this is not a class action settlement, it is not a settlement whose approval is subject to Federal Rule of Civil Procedure 23(g) and the provisions applicable to such a settlement are not herein addressed.

about whether the settlement involved a fair and reasonable resolution of a bona fide dispute between the parties under the FLSA.  Typically, courts rely on the adversary nature of a contested FLSA case which resulted in a settlement as indicia of fairness. *See Lynn's Food Stores,* 679 F.2d at 1354.  If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.  *See id*.

Additionally, the FLSA entitles prevailing plaintiffs to recover "a reasonable attorney's fee ... and costs of the action."  *See*, *e.g., Gray v. Phillips Petroleum Co.,* 971 F.2d 591, 592 (10th Cir. 1992) (quoting 29 U.S.C. § 216(b)).  For purposes of attorneys' fees, plaintiffs are considered a prevailing party if they succeed on any significant issue in litigation which achieves some of the benefit they sought in bringing suit.  *Jackson v. Austin,* 267 F. Supp. 2d 1059, 1063 (D. Kan. 2003).  Though the Court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory.  *Wright v. U-Let-Us Skycap Servs., Inc.,* 648 F. Supp. 1216, 1218 (D. Colo. 1986).

District courts routinely approve settlements reached in FLSA collective actions. *See*, *e.g., Villeda v. Landry's Rest., Inc.,* No. H-08-2287, 2009 WL 3233405 (S.D. Tex. Oct. 7, 2009); *Ruiz v. GVMS, Inc.,* No. H-08-1692, 2009 WL 3157349 (S.D. Tex. Sept. 25, 2009).  Based on the facts presented as well as the consistency of approval of other similar FLSA settlements, this Court should readily conclude the parties' settlement is a reasonable resolution of a bona fide dispute in contested litigation.

**B.      The Proposed Collective Action Settlement Is the Product of Contested Litigation.**

There is no question the proposed settlement meets the first prong of the relevant inquiry.  It is the product of contested litigation.  In their Complaint, Plaintiffs made detailed factual allegations describing Defendants' allegedly unlawful misclassification of the AGM position.  In their motions to dismiss and answer, Defendants denied Plaintiffs' material factual allegations and asserted a number of affirmative defenses that they argued would bar Plaintiffs' claims in whole, or in part.

During this litigation, the parties conducted their own factual investigations regarding Plaintiffs' allegations, exchanged voluminous quantities of documents and discovery responses, including employment and payroll data, and retained experts to assess damages and other case issues.  These efforts required substantial separate analysis and discovery compliance work by the parties, as well as dozens of conferences among the parties to discuss related issues.  The efforts also led to the filing of various contested motions with the Court, including several that were pending at the time of settlement.

In addition to their factual investigations, the parties also analyzed multiple legal issues implicated in this case, including whether and how the concept of a fluctuating workweek might be relevant to the claims, Department of Labor and other guidance and opinions concerning the role and classification of other positions that might be analogous to the AGM position at issue, application of the doctrines of good faith and willfulness to Defendants' conduct, as well as detailed consideration of other of Defendants' various affirmative defenses.

**C.      The Proposed Collective Action Settlement Reflects a Fair and Reasonable Resolution of a Bona Fide Dispute Between the Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues.  The first is confirming the existence of a bona fide dispute between the parties under the FLSA.  The second involves a review of the fairness and reasonableness of the proposed settlement.  The Court should conclude both issues implicated by this second prong of the Court's settlement approval inquiry are satisfied.

1.      <u>A Bona Fide Dispute Exists Between the Parties</u>.

Plaintiffs alleged Defendants violated the FLSA because they misclassified the AGM position as exempt, entitling Plaintiffs to damages and liquidated damages. Plaintiffs provided, among other materials, specific discovery responses from hundreds of Opt-Ins to support their claims.  Defendants denied Plaintiffs' allegations, arguing that they properly classified the AGM position, and produced numerous declarations from current or former AGMs supporting the range of managerial and supervisory duties they performed as AGMs, as well as other testimony and documents which support, according to Defendants, that no FLSA violation occurred.  The parties also maintain bona fide disputes as to what, if anything, Plaintiffs are owed with respect to their claim for unpaid overtime and missed meal and rest breaks, as well as the amount of damages Defendants are liable for, if any, including liquidated damages.

If Plaintiffs' allegations were ultimately adjudged to be correct, Defendants would be faced with the possibility of a significant monetary verdict in favor of Plaintiffs, as well as an obligation to pay litigation fees and costs incurred by Plaintiffs and Defendants alike.  If Defendants' arguments were adjudged to be correct, Plaintiffs would face the

possibility of no recovery of any kind.  Accordingly, the Court should readily conclude

that a bona fide dispute between the parties existed.

       2.    <u>The Proposed Settlement is Fair and Reasonable</u>.

This settlement was the product of arm's-length negotiations by experienced

counsel and has the salutary effect of (i) providing substantial relief to all Plaintiffs, and

(ii) eliminating inherent risks both sides would bear if this complex litigation continued to

resolution on the merits.  A day-long mediation with a qualified mediator (former Judge

Nottingham) established a framework which ultimately allowed the parties to bridge a

significant gap between their respective settlement positions and to obtain the resolution

described above.  Under these circumstances, a presumption of fairness should attach

to the proposed settlement.  *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354

(recognizing courts rely on the adversary nature of a litigated FLSA case resulting in

settlement as indicia of fairness); *see also In re BankAmerica Corp. Secs. Litig.,* 210

F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court[ ] should keep

in mind the unique ability of class and defense counsel to assess the potential risks and

rewards of litigation; a presumption of fairness, adequacy and reasonableness may

attach to a class settlement reached in arms-length negotiations between experienced,

capable counsel after meaningful discovery.").

Moreover, several additional relevant factors confirm the proposed settlement is

fair and reasonable.

       ***a.    Public Policy Favors Settlements.***

Public policy favors settlements. This is particularly true in complex cases, such

as this, where substantial resources can be conserved by avoiding the time, cost, and

rigor of protracted litigation.  *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354

(recognizing policy of encouraging settlement of FLSA litigation); *Petrovic v. Amoco Oil

Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement]

agreements, and courts should approach them with a presumption in their favor.")

(quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371,

1388 (8th Cir. 1990)).

> **b.      *Substantial Obstacles Exist If the Litigation Continues, and the
> Settlement Offers Substantial, Immediate Relief.***

As outlined above, the parties disagree about the merits of Plaintiffs' claims and

the viability of Defendants' defenses.  If litigation had continued, before they would have

been able to present their claims at trial, Plaintiffs would have faced many obstacles,

including Defendants' right to depose up to 48 Plaintiffs, Defendants' anticipated attacks

on the viability of Plaintiffs' expert testimony, Defendants' anticipated dispositive

motions (including on the issues of classification, application of the fluctuating workweek

to calculate damages, and the doctrines of good faith and willfulness), and Defendants'

motion for decertification.  Further, even if Plaintiffs prevailed on liability issues, Plaintiffs

faced considerable obstacles in proving both the nature and extent of Plaintiffs'

individual damages.  Plaintiffs also would have been required to prevail at trial.

In addition, the proposed settlement brings substantial value to each of the

Plaintiffs.  The monetary distribution to the Settlement Collective directly compensates

each member consistent with the claims asserted in this case.  Although the range of

potential recovery at trial could possibly have been greater, it is equally possible the

potential recovery would have been less, or nothing at all.  In fact, as discussed at

pages 12-13, below, the settlement here is well within the range of other, comparable

recent settlements of FLSA retail chain misclassification claims.  Consequently, this settlement brings Plaintiffs value now, as opposed to years from now, and provides certainty regarding the outcome of this matter.  A significant factor weighing in favor of the Court's approval of the proposed settlement is that substantial benefits will be immediately received by the Plaintiffs and made certain by the settlement.  *See In re BankAmerica,* 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they[ ] should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation.  In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotations omitted)).

### c.   This Was a Complex and Potentially Expensive and Lengthy Case.

This case is complex as to both liability and damages.  Many complex issues of fact and law remain unanswered and would have to be resolved at, or before, trial.  Trial would be lengthy, costly and complex.  Plaintiffs would need to provide testimony sufficient to establish Defendants' liability to Plaintiffs.  Proof of damages would have required testimony and evidence supported by detailed records of time worked over the course of the class period.  Post-judgment appeals would be likely.  Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed settlement.

### d.   The Parties and Their Counsel Support the Settlement.

After thorough investigations of the facts and law, the parties have gained a comprehensive knowledge of Plaintiffs' claims and Defendants' defenses.  Additionally,

the parties have ample evidence necessary to an informed assessment of the proposed settlement.  Based on their knowledge of the case and the applicable law, as well as their experience in FLSA actions, the parties' counsel believe that the settlement is fair, reasonable and adequate.  *In re BankAmerica,* 210 F.R.D. at 702 ("Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight.").

Plaintiffs' Counsel only agreed to the settlement of this case after obtaining what they believe is a settlement that amply compensates Plaintiffs, while also taking into consideration that risks faced in continuing the litigation could easily have outweighed the possible benefits or a trial on the merits.  That there are risks in taking a FLSA collective action case to trial is undeniable.  In approving a FLSA settlement regarding retail workers in which the Klafter Olsen firm represented plaintiffs, District Judge Jones in the Middle District of Pennsylvania earlier this year wrote that "[i]t is undisputed that copious risks abound with respect to maintaining this action and establishing liability." *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013).  The risks recognized by Judge Jones, and in other cases, include the issues of maintaining certification through to judgment (in this area of the law, it is not unknown for a case to be decertified following trial, *see*, *e.g.*, *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008) (decertifying assistant store manager collective action after trial)), proving liability, and addressing the contentious issue of the proper method of assessing damages (including how to address computations based on the fluctuating workweek versus regular pay versus full time and one-half).  *Rite Aid Corp.*, WL 84928, at *9-10 ($20.9 million retail misclassification class and collective action

settlement where Mr. Lesser was lead class counsel). The average gross settlement amount made available to claimants in the *Rite-Aid* case was $1,845, and Judge Jones noted that amount represented "an excellent and optimal settlement award for the Class Members." *Id.* at *11.

Here, the average gross settlement amount allocated to each collective settlement member is estimated to be approximately $5,000.  This average gross settlement takes into account the full amount of attorneys' fees that Plaintiffs' counsel will seek, Plaintiffs' litigation costs, anticipated notice and claims administration fees, and a modest service award to Jacquelyn Whittington.[4]  Although every case is different, and the settlement in this case was tailored to the parties' assessment of Plaintiffs' claims here, the gross recovery afforded Plaintiffs in this case is, by comparison to another recent case of Klafter Olsen & Lesser LLP's, positive for Plaintiffs.  In that case, FLSA claims brought by assistant store managers settled for $34 million and the average claimant's gross recovery was $1,760.  District Judge McConnell last year termed that result "magnificent" at the final approval hearing.  Order Granting Final Approval, *Nash v. CVS Caremark Corp.*, No. 1:09-cv-00079 (D.R.I. Apr.

---

[4] These additional amounts are in line with the amounts in the other cases referenced in this section.  The claim administration fee, specifically, is to be no more than $85,000.00 based upon a binding estimate provided by the experienced claim administrator the Garden City Group, which shall cover all aspects of the administration, including determining the amounts of each collective settlement member's recovery, the amount of taxes to be withheld for each, verifying the mailing addresses of the settlement collective members through a database, the printing and sending of individualized notices, setting up a telephone line for inquiries and a post office box for receiving any returned notices or opt-outs, tracing returned notices, setting up a qualified settlement fund, printing the checks and paying the collective action members, sending tax forms and paying the employment taxes, and generally responding to inquiries and administering the settlement.   In the experience of Plaintiffs' Counsel this is a reasonable binding estimate and the Garden City Group is an exceptionally reliable claims administrator.

9, 2012).  The gross recoveries in other recent chain store misclassification settlements in which the same counsel have been involved have been less than the result obtained in this settlement.  *See* Order Granting Final Approval, *Alli v. Boston Market Corp.*, No. 10-cv-0004 (D. Conn. Apr. 17, 2012) (final approval obtained for $3 million for 1,921 class members in restaurant assistant store manager case, for gross average proceeds of $1,561); Order Granting Final Approval, *Jenkins v. Sports Authority*, No. 09-cv-2224 (E.D.N.Y. Sept. 30, 2011) (final approval obtained for $990,000 settlement for class of 559 co-managers in retail store case, for gross average proceeds of $1,771); Order Granting Final Approval, *Caissie v. BJ's Wholesale Club*, No. 08-cv-30220 (D. Mass. June 24, 2010) (final approval obtained June 24, 2010 for $9.15 million settlement for class of 2,803 retail store "mid-managers," for gross average proceeds of $3,264).

Accordingly, Plaintiffs and Defendants respectfully suggest this Court should conclude the proposed settlement reflects a fair and reasonable resolution of a bona fide dispute under the FLSA and approve the settlement.

**D.    The Requests for Attorneys' Fees And A Service Award Are Fair and Reasonable.**

Plaintiffs' Counsel requests that the Court approve the attorneys' fees included in the Settlement Agreement, which is 33 1/3% of the settlement fund amount.  The percentage of the fee requested here is entirely in line with precedent in this area.  *See*, *e.g.*, *Lerma v. Wal-Mart Stores, Inc.*, No. CJ-2001-1395 (Okl. Cir., Cleveland Cnty. Mar. 16, 2001) (40% fee in wage and hour settlement of $42.5 million); *Barnwell v. Corrections Corp. of Am.*, No. 08-02151 (D. Kan. Feb. 12, 2009) (33% fee in $7 million wage and hour settlement); *see also Rite Aid Corp.,* 2013 WL 84928 at *12-13 (addressing fees and precedents in this area and finding 32% fee reasonable); *Clark. v.*

14

*Ecolab Inc.*, Nos. 07-CIV-8623, 04-CIV-4488, 06-CIV-5672, 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) ("An award of one-third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases.").  Notably, the request is also considerably less than the lodestar incurred by Plaintiffs' counsel for litigation of this case.  Their combined lodestar to the date of settlement of almost $2 million (which does not include their costs), based on counsel's normal billing rates, dwarves what the request for attorneys' fees of 33% will recover.  Plaintiff's counsel were required to expend fees of that magnitude in litigating this case through discovery and almost to trial, including because of the efforts required in obtaining individualized discovery responses to numerous interrogatories and requests for admission from each Plaintiff.  Plaintiff's counsel will thus receive a multiple of only about 0.40 times their fees incurred to date.  Most assuredly, this is a reasonable fee, particularly given the quality of the result obtained for the collective action settlement members, as discussed. *See Rite Aid Corp.,* 2013 WL 84928 at *13 (addressing cross-check multiplier and finding positive multiplier appropriate in similar case).  Approval of Plaintiffs' Counsel's actual incurred litigation costs of $153,496.95, which were all necessarily incurred in the prosecution of this action and which are on the books and records of Plaintiffs' Counsel's firms, is also appropriate and reasonable.  *Id.*; *see also, e.g  In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund.").

In addition, the payment of a service bonus in the amount of $7,500 to the Named Plaintiff, Ms. Whittington, is also appropriate, if not modest, and also within the

line of precedent.  *See id.*; *Reyes v. Altamarea Grp., LLC.*, 2011 WL 4599822, at *9

(S.D.N.Y. Aug. 16, 2011) (granting an award of $15,000 to three class representatives

representing 15% of the settlement amount in employment class action).

## IV.   <u>CONCLUSION</u>

This collective action settlement was reached as a result of contested litigation

and resolves a bona fide dispute between the parties under the FLSA.  The parties

engaged in lengthy investigation of the pertinent facts and law and mediated this case

before finally reaching settlement.  The parties believe the settlement is fair, reasonable

and adequate, and provides Plaintiffs with significant relief in a hotly contested matter.

For these reasons, and those set forth above, the parties respectfully suggest the Court

should approve the Settlement.

A proposed form of Approval Order accompanies this Motion.

Respectfully submitted this 12th day of August, 2013.


/s/ Steven M. Feder
Steven M. Feder
FEDER LAW FIRM
Equitable Building
730 17th Street, Suite 550
Denver, CO 80208
(303) 221-5599 (Tel.)
(303) 221-7357 (Fax)
steve@federlawfirm.com

Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
(914) 934-9200 (Tel.)
(914) 934-9220 (Fax)
frudich@klafterolsen.com
slesser@klafterolsen.com

Silvia A. Strikis
KELLOGG, HUBER, HANSEN, TODD,
   EVANS & FIGEL, PLLC
1615 M Street, NW
Suite 400
Washington, DC 20036
(202) 326-7900 (Tel.)
(202) 326-7999 (Fax)
sstrikis@khhte.com


**Attorneys for Plaintiff
and Settlement Collective**

/s/ Brian L. Duffy
Brian Duffy
Naomi Beer
Jeanette Brook
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
(303) 572-6500 (Tel.)
(303) 572-6540 (Fax)
DuffyB@gtlaw.com
BeerN@gtlaw.com
BrookJ@gtlaw.com

**Attorneys for Defendants Taco Bell of
America, Inc. and Taco Bell Corp.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 12, 2013, a true and correct copy of the

foregoing JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

was electronically filed with the Clerk of the court using the CM/ECF system which will

send notification of such filing to the following:

Steven M. Feder
FEDER LAW FIRM
Equitable Building
730 17th Street, Suite 550
Denver, CO 80208
(303) 221-5599 (Tel.)
(303) 221-7357 (Fax)
steve@federlawfirm.com

Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
(914) 934-9200 (Tel.)
(914) 934-9220 (Fax)
frudich@klafterolsen.com
slesser@klafterolsen.com

Silvia A. Strikis
KELLOGG, HUBER, HANSEN, TODD,
   EVANS & FIGEL, PLLC
1615 M Street, NW
Suite 400
Washington, DC 20036
(202) 326-7900 (Tel.)
(202) 326-7999 (Fax)
sstrikis@khhte.com

**Attorneys for Plaintiff
and Settlement Collective**

Brian Duffy
Naomi Beer
Jeanette Brook
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
(303) 572-6500 (Tel.)
(303) 572-6540 (Fax)
DuffyB@gtlaw.com
BeerN@gtlaw.com
BrookJ@gtlaw.com

**Attorneys for Defendants Taco Bell of
America, Inc. and Taco Bell Corp.**

 */s/ Karen R. Loveland*
Karen R. Loveland